UNITED STATES of America, Appellee,

v.

Joe L. TROTTER, Appellant.

UNITED STATES of America, Appellant,

v.

$120,612.00 IN U.S. CURRENCY, Appellee.

UNITED STATES of America, Appellant,

v.

Joe L. TROTTER, Appellee.

Nos. 88–2753, 88–1631 and 89–1632.

United States Court of Appeals, Eighth Circuit.

Submitted: June 15, 1989.

Decided Nov. 6, 1989.

Arthur L. Allen, Little Rock, Ark., for appellant.

Terry L. Derden, Little Rock, Ark., for appellee.

Before BEAM, Circuit Judge, and HEANEY and BRIGHT, Senior Circuit Judges.

HEANEY, Senior Circuit Judge.

Joe L. Trotter was convicted of conspiracy to distribute cocaine and illegal possession of a firearm. He was sentenced to twenty years in prison and fined $120,000. He challenges the sufficiency and admissi-

bility of the evidence. In addition, the government challenges the propriety of the district court's order taking Trotter's criminal fine from assets already involved in a civil forfeiture proceeding. We affirm in all respects.

## I.

Trotter was stopped for traffic violations while riding in a limousine with four other men in Little Rock. When the doors opened, a straw of the type commonly used with cocaine with white powder on one end, as well as other drug paraphernalia, was in plain view. The officer asked them if they had drugs or other contraband in the car. Trotter indicated that he owned the car and that they had a gun in the trunk. The officer obtained consent to search and found a semi-automatic in the trunk. He also found a garment bag that contained marijuana and $96,000 in cash. Another $20,500 was located in a brown sack. The five men were arrested. A search of the car at the police station uncovered nine grams of cocaine in the passenger compartment. The police discovered that the gun was stolen and found traces of cocaine on the money. Trotter had previously been convicted of distributing heroin, was on parole, and had not filed a tax return during the previous two years. He claimed to be in the limousine business. The jury found him guilty of conspiracy to distribute cocaine, use of a firearm in a drug offense and being a felon in possession of a gun.

## II.

■ Trotter raises several challenges to the admissibility of certain evidence. First, he challenges the propriety of the government's showing that the gun was stolen in Indiana. Trotter argues that, from other facts, it was obvious that the gun was transported in interstate commerce within the meaning of the statute under which Trotter was charged. 18 U.S.C. § 922 (1976). Therefore, reference to its theft was unnecessary and prejudicial. We disagree. The government was entitled to show the origin of the gun to prove that it was transported in interstate commerce,

and references to its theft were only minimally prejudicial. Trotter effectively conceded that he was a felon in possession of a gun and the only other issue was the relation of the gun to any drug-dealing.

■ Next, Trotter challenges the admissibility of the cash found in the trunk, and the evidence that he filed no tax returns. We believe that the sum of cash found with the marijuana and the gun is relevant to the issue of distribution and was further tied in by the lab reports showing that the money had recently been in contact with cocaine. In addition, the failure to file any tax returns was probative of net worth and therefore relevant to Trotter's claim that the money was not the product of drug distribution. Evidence that one of Trotter's companions worked for a drug dealer was relevant to the conspiracy charge.

■ Finally, Trotter seeks to suppress the evidence seized at the time of his arrest. First, he argues that his *Miranda* rights were violated because he was in custody when the officer who stopped the limousine asked anyone if they had drugs or contraband. There is no merit to this contention. *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (traffic stops not custodial absent unusual circumstances such as length of detention or conduct of the officer). Second, Trotter argues that the consent to search the trunk was inadequate. We agree with the magistrate's judgment that there was no error. The driver of the car signed a consent to search form and the arresting officer testified that Trotter orally consented to a search. Trotter argues that the consent was to get the gun out of the trunk only. The magistrate found, however, that both consents were unlimited. Even if any consent had been limited, there was sufficient probable cause to search the garment bag in the trunk in light of the presence of the semi-automatic below it and the cocaine paraphernalia within the officer's plain view when he first stopped the vehicle. *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

## III.

Trotter also argues that there was insufficient evidence to support the jury's verdict. On review, we construe any inferences that can reasonably be drawn from the evidence and testimony in favor of the verdict. *United States v. Sullivan,* 618 F.2d 1290, 1295 (8th Cir.1980).

There was sufficient evidence to support the view that the drugs were for distribution rather than for personal use. The quantity of the cocaine, while not large, is sufficient, together with the large sum of money found with cocaine traces, to support an inference of distribution. In addition, there was no other apparent source of income. *United States v. Wood,* 834 F.2d 1382 (8th Cir.1987) (large sum of money from unexplained source can be one factor supporting distribution conviction).

This evidence, together with the overt acts of the four companions, is also sufficient to support the jury's finding of a conspiracy. The five men were admittedly traveling together, allegedly to Los Angeles. The jury could reasonably find that they were all aware of the drugs found on the floor of the passenger compartment. The explanations and answers given by the men for their conduct could easily be dismissed as not credible.

Lastly, there was also sufficient evidence that the gun was related to a drug offense. The jury found that the men were engaged in the act of distributing cocaine. From the totality of the evidence and the gun's location with respect to the money and marijuana, the jury could reasonably conclude that the semi-automatic was used as part of the conspiracy.

## IV.

The government also brought separate civil forfeiture proceedings before the same court against the $120,612 found in the trunk. Before those proceedings were complete and after Trotter's conviction, the district court fined Trotter $120,000. The court ordered that Trotter's criminal fine of $120,000 be paid from the seized money. Later, the district court forfeited the remaining $612 to the government. The government cross-appeals from the district court's decision to assess the fine from the seized assets. Criminal fines are paid to the federal treasury, while a portion of the forfeited assets are sometimes directed to state and local drug enforcement agencies. 21 U.S.C. § 881(e)(1) (Supp.1989).

The government argues that once civil forfeiture is commenced, no part of what is seized may be used to pay other debts. The government reasons that, first, the civil forfeiture action is a separate action taken against the property, *in rem,* and not the person. *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). Second, title of the object *in rem* vests in the United States from the time of the illegal act. Once forfeiture is completed, title relates back to the time of the commission of the illegal act defeating subsequent transfers. 21 U.S.C. § 881(h). Third, a criminal fine becomes a lien against property owned by the defendant. 18 U.S.C. § 3613 (1985). Fourth, the district court thus lacked the power to attach the funds *in rem* because Trotter did not hold title to the money at the time of the district court order because the money was later forfeited. As a result, the money should be forfeited. We disagree with the government's contention because we believe that the codified relation-back rule of 21 U.S.C. § 881 does not defeat transfers ordered by the district court and made to federal government creditors.

## A.

In a forfeiture proceeding, the property becomes the named defendant. In proceedings brought under section 881, the property is placed in the custody of the Attorney General and under the jurisdiction of, and subject to the orders of, the district court. Section 881(c) provides:

> Property taken or detained under this section shall not be repleviable, but shall be deemed to be in the custody of the Attorney General, subject only to the

orders and decrees of the court or the official having jurisdiction thereof.

21 U.S.C. § 881(c).

To obtain civil forfeiture, the government must initially show that there is probable cause to believe that the object was used in criminal activity. The burden then shifts to the citizen to show by a preponderance of the evidence that the property should not be subject to forfeiture. *One Blue 1977 A.M.C. Jeep CJ–5 v. United States,* 783 F.2d 759, 761 (8th Cir.1986). Once forfeiture is declared, the government's title relates back in time to the commission of the criminal act.

> All right, title and interest in property described in subsection (a) of this section shall vest in the United States upon commission of the act giving rise to forfeiture under this section.

21 U.S.C. § 881(h).

We had previously interpreted section 881 as a permissive forfeiture statute to which the relation-back doctrine did not apply. *United States v. Thirteen Thousand Dollars in United States Currency,* 733 F.2d 581, 584 (8th Cir.1984). Congress became concerned that defendants could defeat forfeiture under section 881 by transferring assets prior to the completion of forfeiture proceedings. Congress added section 881(h) in 1984 to nullify transfers *made by the original owner* while the forfeiture action was pending.

> The interest of the United States is to vest at that time, and is not necessarily extinguished simply because the defendant subsequently transfers his interest to another. Absent application of this principle a defendant could attempt to avoid criminal forfeiture by transferring his property to another person prior to conviction.
>
> The purpose of this provision is to permit the voiding of certain pre-conviction transfers and to close a potential loophole in current law whereby the criminal forfeiture sanction could be avoided by

transfers that were not " 'arms' length" transactions.

S.Rep. No. 225, 98th Cong., 2d Sess. 200–01, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3383–84.

When large sums of money are found, typically various individuals and agencies ask the court for a share, creating confusion. *See e.g., United States v. $5,644,-540.00 in U.S. Currency,* 799 F.2d 1357 (9th Cir.1986) (private claimants, state tax board, federal government).

> In the last few years a discernible shift in the methodology of law enforcement has taken place. Federal, state and local agencies have placed a new emphasis on depriving criminal activity of its largesse. * * * Most notable among the spate of legislative enactments has been the Comprehensive Crime Control Act of 1984, which includes the Comprehensive Forfeiture Act of 1984. It is generally recognized and admitted that this Act was passed so hastily that the use of the term "comprehensive" in its title is more aspirational than descriptive.
>
> What has yet to be addressed at all by legislation and only fleetingly by case decisions is the horripilating confusion occasioned by different law enforcement agencies pouncing upon the same assets with each claiming the right to drag the spoils of this war on crime to its own lair. Simply stated, there is no legislation which sets priorities for these conflicting claims. * * * I am certain, however, that legislation alone will provide a satisfactory solution to future cases which are certain to follow.

*Eggleston v. Colorado,* 636 F.Supp. 1312, 1315 (D.Colo.1986), *rev'd on other grounds,* 873 F.2d 242 (10th Cir.1989). We agree that the 1984 Act's codification of the relation-back doctrine does not completely answer who is to receive the money. It makes clear that transfers by the former owner are invalid, and that title vests "in the United States."[1] No court has re-

---

1. Since title vests "in the United States," other creditors, such as state agencies, may not claim any part of the funds if the government successfully obtains forfeiture. *Eggleston v. Colorado,*

873 F.2d at 248; *see Caplin & Drysdale Chartered v. United States,* —— U.S. ——, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989) (cannot use funds to pay attorneys); *United States v. Monsanto,*

solved who may have priority between different federal government creditors. Nor is any solution apparent on the face of the statute.

Prosecutors may choose between separate forfeiture proceedings and forfeiture proceedings joined with a criminal prosecution thus subject to a higher standard of proof. We believe the section at issue in this case was merely meant to prevent non-government transfers pending the outcome of whatever proceeding was brought. We conclude that the district court's order was proper in this light.

## B.

The district court assessed a fine at the close of the criminal proceedings to be paid from the seized funds which were under the discretionary control of that court. Such an order uses the court's sentencing and supervisory powers together as a substitute for further and usually costly civil proceedings contesting the propriety of seizing the funds. We do not mean to suggest, however, that fines and forfeiture are interchangeable. The purpose of a fine is to punish the defendant and also to deprive him of ill-gotten gains. Civil forfeiture involves only the latter.[2] We trust, however, that district courts will properly evaluate each case, deciding what course is warranted in light of the offense committed, the existence of unseized assets and the need for punishment. We do not think that such a practice as used here conflicts in any way with the text of the statute which requires that title vest "in the United States." It is perfectly consistent with Congress' intentions and provides district

—— U.S. ——, 109 S.Ct. 2657, 105 L.Ed.2d 512, 525 (1989) (district court lacks power in forfeiture under 21 U.S.C. § 853 to do anything but act to preserve seized assets because of express terms of section 853(c)).

**2.** We are satisfied that the district court properly understood these distinctions. We thus disagree with the dissent's characterization of this case as a "situation in which the defendant, through the good offices of the district judge,

courts with much-needed flexibility at a time when they are overwhelmed with an ever-growing docket.

## V.

Accordingly, we affirm the rulings of the district court. Where a prosecutor chooses to seek civil forfeiture and where a criminal conviction is obtained prior to the conclusion of the civil proceedings, a district court may obviate the need for further proceedings through the use of its power to fine. Trotter's contentions are without merit and his fine may be taken from the seized funds under the district court's control.

BEAM, Circuit Judge, concurring in part and dissenting in part.

I concur in parts I, II and III of the affirming opinion which deal with the issues raised by appellant Trotter. However, because I believe that the portion of the affirming opinion dealing with the government's cross-appeal is conceptually flawed, I respectfully dissent.

This is not a case in which the district court determined the particular account of the United States into which the seized money should flow. This is a situation in which the defendant, through the good offices of the district judge, has satisfied a criminal penalty, a fine amounting to $120,000, with assets of the United States. Mr. Justice White, in *United States v. Monsanto*, —— U.S. ——, 109 S.Ct. 2657, 2665, 105 L.Ed.2d 512 (1989), makes the point:

> [The forfeiture statute] states that "[a]ll right, title, and interest in [forfeitable] property ... vests in the United States

has satisfied a criminal penalty, a fine amounting to $120,000, with assets of the United States." *Post* at 158. First, the defendant has had absolutely no control over the disposition of the money. Second, if the learned district court judge had truly believed that a fine was appropriate to punish Trotter, she would not have taken the fine from the seized assets. Trotter has not gained anything, nor has the United States lost anything, by the district court's decision.

upon the commission of the act giving rise to forfeiture." 21 U.S.C. § 853(c) (1982 ed., Supp. V). Permitting a defendant to use assets for his private purposes that, under this provision, will become the property of the United States if a conviction occurs, cannot be sanctioned.

Mr. Justice White discusses the legal principles underlying this conclusion in *Caplin & Drysdale, Chartered v. United States,* —— U.S. ——, 109 S.Ct. 2646, 2653–54, 105 L.Ed.2d 528 (1989).

It is abundantly clear that the seized assets belonged to the United States at the time the criminal penalty was imposed. And, neither a district judge nor a circuit judge has authority to expend the funds of the United States without statutory authority. Although the majority contends that the funds in question were under the "discretionary control" of the district court (without citing the source of this purported power), it cites no authority (and we have found none) that extends this alleged discretion to the payment of a fine imposed upon a criminal defendant with monies of the United States.

The attempted satisfaction of the $120,-000 fine with the seized assets was improper. Accordingly, I concur in the disposition of the appeal of Mr. Trotter and dissent to the holding of the majority in the cross-appeal of the United States.