**UNITED STATES of America,
Plaintiff–Appellee,
Cross–Appellant,**

v.

**Jerry R. PIPPIN, Defendant–Appellant,
Cross–Appellee.**

No. 89–4002.

United States Court of Appeals,
Eleventh Circuit.

June 25, 1990.

Claude H. Tison, Jr., MacFarlane, Ferguson, Allison & Kelly, Tampa, Fla., for defendant-appellant, cross-appellee.

John J. Powers, III, U.S. Dept. of Justice, Antitrust Div., Washington, D.C., for plaintiff-appellee, cross-appellant.

\* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

Before JOHNSON, Circuit Judge, HILL\* and HENLEY\*\*, Senior Circuit Judges.

HENLEY, Senior Circuit Judge:

Both the defendant, Jerry Pippin, and the government appeal the sentence given Mr. Pippin for rigging bids in violation of section one of the Sherman Act, 15 U.S.C. § 1 (1988). The parties agree that the district court erroneously applied the Sentencing Guidelines but disagree on what sentences can be imposed under the Guidelines on remand. The defendant also questions whether the Guidelines are applicable to this case, arguing that his bid-rigging activity ended before the Guidelines went into effect. We uphold the district court's ruling that the Guidelines govern Mr. Pippin's sentencing, but vacate his sentence and remand for resentencing consistent with this opinion.

### I.

From the early 1970s until 1988, dairies in the Florida panhandle conspired to rig bids for school milk contracts. Mr. Pippin participated in this scheme when he was general manager of the Tallahassee plant of Borden Milk Company in 1982–1985 and after he became general manager of the Borden Pensacola plant in 1986. As general manager of the Pensacola plant, the defendant joined with competitors to rig bids for 1987–1988 school-year contracts. Late in the summer of 1987, he learned that another dairy had underbid his plant for a contract Borden was supposed to have won under the bid-rigging agreement. Mr. Pippin then informed his competitors that he would not participate in any future bid rigging. According to the defendant, he reiterated his decision not to engage in additional bid rigging on several occasions when competitors contacted him in the fall of 1987. However, Mr. Pippin acknowl-

\*\* Honorable J. Smith Henley, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

**1480**

edges that he continued to honor his prior commitment not to compete for the 1987–1988 contracts for which bids had not already been submitted. Also, he does not deny that until July 1988 the Pensacola plant performed and received payment under bid-rigged contracts.

Pursuant to a plea agreement prepared under Federal Rule of Criminal Procedure 11(e)(1)(B), Mr. Pippin pled guilty to an information charging him with one count of violating section one of the Sherman Act. In return for the defendant's assistance in its ongoing investigation, the government agreed to recommend a sentence of four months imprisonment in a federal prison camp with no personal fine. The district court accepted the plea and held that the Guidelines were to be used in sentencing. Subsequently the government filed a motion under Guideline § 5K1.1 requesting that the district court depart from the Guidelines in order to impose no personal fine because of Mr. Pippin's cooperation with the government's investigation. The government argued that the motion for departure was for only the fine portion of the sentence and that "no departure from the jail sentence portion of the Guidelines sentence [was] being sought."

At the sentencing hearing, the district court strongly disagreed with the government's position that the 5K1.1 motion could be limited to the fine portion of the sentence. It appears that ultimately the district court decided not to depart from the Guidelines for either the fine or incarceration imposed. Commenting that its sen-

tence was "within the Guidelines," the district court imposed a punishment of four months of community confinement followed by one year of supervised release; and payment of any costs incident to the confinement and supervision of release, a $25,000.00 fine, and a $50.00 special assessment.

## II.

On appeal both parties agree that the district court did not sentence within the Guidelines but disagree on what sentence should have been imposed. The sharply conflicting views held by the government, the defendant, the probation officer who prepared the presentence report, and the district court, all demonstrate the "'horripilating confusion'"[1] that the Guidelines have wrought. However, we need not waste time disentangling a snarly rope if the Guidelines may not be used. Thus, we first address the defendant's argument that the Guidelines are inapplicable here.

## A.

The Guidelines went into effect on November 1, 1987, and only apply to criminal offenses "committed after" that date. *See* Sentencing Act of 1987, Pub.L. No. 100–182, § 2(a), 101 Stat. 1266 (1987). While the legislative history may not be entirely clear, we conclude that Congress intended for the Guidelines to be used both for offenses commenced after November 1, 1987 and offenses begun before but not completed until after that date.[2] The bid-

---

1. This apt expression is borrowed from another context in *United States v. Trotter,* 889 F.2d 153, 157 (8th Cir.1989) (quoting *Eggleston v. Colorado,* 636 F.Supp. 1312, 1315 (D.Colo.1986), *rev'd on other grounds,* 873 F.2d 242 (10th Cir.1989)), *reh'g en banc granted.*

2. There is some conflict in the legislative history of the Sentencing Act of 1987 regarding whether the Guidelines apply to offenses that began before November 1, 1987 and continued after that date. *Compare* 133 Cong.Rec. H10,019 n. 5 (daily ed. Nov. 16, 1987) (statement of Cong. Conyers) (interpreting Act as making Guidelines inapplicable to "an offense begun before November 1, 1987 and completed after that date") *with* 133 Cong.Rec. S16,646 (daily ed. Nov. 20, 1987) (statement of Sens. Biden, Thurmond,

Kennedy & Hatch). ("It is the view of the Senate sponsors, and the view of the Department of Justice, that the sentencing guidelines should be given effect with respect to any continuing offense completed after November 1, 1987.") *and* President's Statement Upon Signing S. 1822, 23 Weekly Comp.Pres.Doc. 1452, 1452–53 (Dec. 7, 1987) ("Offenses begun prior to, but not completed until on or after November 1, 1987, will be subject to the Sentencing Reform Act.") After exhaustively reviewing the legislative history, at least two courts recently have interpreted the Sentencing Act of 1987 as rendering the Guidelines applicable to offenses that began before November 1, 1987 but were not completed until after that date. *See United States v. Story,* 891 F.2d 988 (2d Cir.1989); *United States v. Tharp,* 892 F.2d 691 (8th Cir.1989).

rigging conspiracy in this case began before November 1, 1987, and continued until at least July, 1988; thus, the Guidelines should be used to sentence Mr. Pippin unless thereby his constitutional rights would be violated. The defendant contends that application of the Guidelines to his sentence would violate his rights under the ex post facto clause, U.S. Const. art. I, § 9, cl. 3.

Some courts have concluded that the ex post facto clause does not bar application of the Guidelines to conspiracies that began before and continued after November 1, 1987.[3] *See, e.g., United States v. Watford,* 894 F.2d 665 (4th Cir.1990); *United States v. Lee,* 886 F.2d 998, 1003 (8th Cir.1989). However, if an alleged conspirator can meet his burden of proving withdrawal from the conspiracy before November 1, 1987, then the ex post facto clause may bar application of the Guidelines, notwithstanding the fact that the conspiracy may have continued beyond this date. *See Watford,* 894 F.2d at 670–71 (finding Guidelines applicable because defendant had not met burden of proving withdrawal before November 1, 1987); *Lee,* 886 F.2d at 1003 (finding Guidelines applicable because at no time before November 1, 1987 had defendant "affirmatively disavowed the conspiracy").

██ The alleged conspirator demonstrates withdrawal by proving that he (1) "undertook affirmative steps, inconsistent with the objects of the conspiracy, to disavow or to defeat the conspiratorial objectives," and (2) "either communicated those acts in a manner reasonably calculated to reach his coconspirators or disclosed the illegal scheme to law enforcement authorities." *United States v. Finestone,* 816 F.2d 583, 589 (11th Cir.), *cert. denied,* 484 U.S. 948, 108 S.Ct. 338, 98 L.Ed.2d 365 (1987). Merely ending one's activity in a conspiracy may not constitute withdrawal. *Id.*

Mr. Pippin contends that he withdrew from the conspiracy when he told his coconspirators late in the summer of 1987 that he would no longer engage in bid rigging. As evidence of withdrawal, the defendant notes that when competitors approached him in the fall of 1987, he continued to refuse to join in any other bid-rigging agreements.

Although it is arguable that the defendant's communication to his coconspirators satisfied part two of the *Finestone* test, he has not met his burden of showing adequate affirmative steps to disavow or defeat the conspiratorial objectives, as required by part one of the test. In order to determine the objectives of a bid-rigging conspiracy, we look to the conspiratorial agreement, the "relevant contours" of which are charged in the indictment or information. *See United States v. Dynalectric Co.,* 859 F.2d 1559, 1564 (11th Cir. 1988), *cert. denied,* — U.S. ——, ——, 109 S.Ct. 1641, 1642, 104 L.Ed.2d 157 (1989). Paragraph three of the indictment alleges that "the substantial terms" of the conspiracy agreement included "to refrain from submitting bids ... to certain school boards for the supply of milk" and "to have defendant's employer supply milk to certain school boards at artificial and noncompetitive prices." Paragraph four alleges that conspiratorial acts included "refraining from bidding ... for the supply of milk to certain school boards" and "having defendant's employer supply milk to certain school boards and receive compensation therefor." Mr. Pippin has admitted that he honored his prior agreement not to bid for the school milk contracts that remained after he informed his coconspirators that he would no longer participate in bid rigging. Also, the defendant managed the Pensacola plant while it performed and received compensation under the bid-rigged

We find the reasoning of these two cases persuasive here.

**3.** We assume that the Guidelines mandate a sentence greater than what Mr. Pippin would have received under pre-Guidelines sentencing and thus that ex post facto concerns are implicated here. *See generally United States v. White,*

869 F.2d 822, 826 (5th Cir.1989) (per curiam) (assuming that Guidelines mandate punishment for drug conspirator greater than previous norm and then addressing the question whether application of Guidelines violated his ex post facto rights).

contracts throughout the 1987–1988 school year. These actions taken by Mr. Pippin are conclusive evidence that he had not effectively withdrawn from the bid-rigging conspiracy by November 1, 1987, notwithstanding his communication to coconspirators before this date that he would not participate in future bid rigging.

■ As part of his ex post facto position, the defendant also appears to argue relatedly that in order for the Guidelines to be constitutionally applied to his sentencing, the government must establish that he committed an overt act in furtherance of the conspiracy after November 1, 1987. This contention appears to be foreclosed, however, by *United States v. Wells Fargo Armored Service Corp.*, 587 F.2d 782, 783 (5th Cir.1979) (per curiam), which rejected a similar argument. *See id.* (affirming a conviction of conspiracy under section one of the Sherman Act after a plea of nolo contendere, even though defendant argued that his conviction violated the ex post facto clause "in that the indictment purported to charge a felony without alleging that overt acts occurred during the time period after December 21, 1974, when the offense was made a felony"); *see also Watford*, 894 F.2d at 670–71 (upholding use of Guidelines in sentencing mail fraud coconspirator even though there was "no criminal conduct ascribed to him" after May 15, 1987).

Even if the defendant's legal argument has merit, the facts of this case do not support his contention that he ended all activity in support of the conspiracy before the effective date of the Guidelines. As mentioned, Mr. Pippin managed his plant while it received payment under bid-rigged

contracts after November 1, 1987. This management activity constituted conduct in furtherance of the conspiracy. *Cf. Dynalectric*, 859 F.2d at 1564 n. 6 (noting that a conspirator's receipt of payments under a bid-rigged contract and payoffs to its coconspirators would constitute overt acts made in furtherance of the conspiracy for statute-of-limitations purposes).

Thus, we conclude that the ex post facto clause does not bar application of the Guidelines to the defendant's sentence.

### B.

Having found that the Guidelines apply, we must now determine whether the sentence imposed is consistent with the Guidelines, and if it is not, what types of sentences may be imposed upon remand.

### 1.

Neither party disputes the presentence report findings that the defendant has an offense level of nine[4] and a criminal history category of one. This combination of offense level and criminal history produces a sentencing range of four to ten months imprisonment. *See* Guidelines ch. 5, pt. A (sentencing table). However, the district court is not required to sentence the defendant to a prison term in this case. The Guidelines allow the district court to substitute intermittent confinement, community confinement, or home detention for the imprisonment mandated by the sentencing table, provided that the alternative punishment is for a length of time within the applicable guideline range and is imposed as a condition of probation.[5]

---

4. The offense level was determined using the guideline for antitrust offenses. *See* United States Sentencing Comm'n, *Guidelines Manual* § 2R1.1 (Nov. 1989) (Bid–Rigging, Price–Fixing or Market–Allocation Agreements Among Competitors) [hereinafter Guidelines].

5. The Guidelines authorize a sentence of probation instead of imprisonment "if the minimum term of imprisonment specified by the Sentencing Table is at least one but not more than six months, provided that the court imposes a condition or combination of conditions requiring intermittent confinement, community confine-

ment, or home detention as provided in § 5C1.1(c)(2)." Guidelines § 5B1.1(a)(2). Section 5C1.1(c)(2) states that "[i]f the minimum term of imprisonment in the applicable range in the Sentencing Table is at least one but not more than six months, the minimum term may be satisfied by a sentence of probation that includes a condition or combination of conditions that substitute intermittent confinement, community confinement, or home detention for imprisonment according to the schedule in § 5C1.1(e)." *Id.* § 5C1.1(c)(2). The schedule in section 5C1.1(e) provides that one day of intermittent confinement in prison or jail, one day of

■ Although the length and type of incarceration given by the district court—four months of community confinement—is a permissible substitute for the imprisonment required by the sentencing table, the sentence of community confinement is not technically within the Guidelines because it was not imposed as a condition of probation, as required by Guideline § 5B1.1(a)(2). The imposition of community confinement without probation also cannot be upheld as a permissible departure from the Guidelines because the district court offered no reason for such departure as required by 18 U.S.C. § 3553(c)(2) (1988).[6]

■ The district court also erred in determining the defendant's fine. Guideline § 2R1.1 specifies that an individual antitrust conspirator should be fined an amount that "is from 4 to 10 percent of the volume of commerce, but not less than $20,000." Guidelines § 2R1.1. This fine cannot exceed the greater of $250,000.00, twice the gross pecuniary gain from the offense, or twice the gross pecuniary loss to the victim. *See* 18 U.S.C. § 3571(b), (d) (1988); Guidelines § 5E1.2, commentary n. 2.

The government argues that the applicable guideline range for the fine is $231,-450.00 to $578,625.00,[7] limited by the maximum fine amount in 18 U.S.C. § 3571. The presentence report, in contrast, concluded that the guideline range is $2,000.00 to $2,314,504.00, limited by a statutory maximum amount of $250,000. Without making any factual findings, the district court imposed a fine of $25,000.00.

The fine imposed is deficient in several respects. The court should have made explicit findings regarding the applicable guideline fine range.[8] If the government's figures are accurate, then the $25,000.00 fine is far below the guideline range. Assuming the government's calculations are correct and the district court did not intend to depart from the Guidelines, the court could impose a $25,000.00 fine only if it (1) found that the defendant lacked the ability to pay the guideline fine, and (2) imposed community service in lieu of the difference between the fine imposed and the fine mandated by the Guidelines. *See* Guidelines § 2R1.1, commentary n. 2 ("If the court concludes that the defendant lacks the ability to pay the guideline fine, it should impose community service in lieu of a portion of the fine. The community service should be equally as burdensome as a fine."); *id.* § 5E1.2(f) (noting that if defendant establishes his inability to pay fine, then court may impose a lesser fine or waive the fine, should "consider alternative sanctions in lieu of all or a portion of the fine, and must still impose a total combined sanction that is punitive"). The district court did not meet either of these conditions in imposing its sentence. Of course, the fine would be permissible if the court had departed from the Guidelines and given sufficient reasons for this departure as required by 18 U.S.C. § 3553(c)(2). But the district court apparently thought the sentence was within the Guidelines and did not discuss whether departure was justified.[9]

In light of failure of the district court to make factual findings on disputed issues,

---

community confinement, or one day of home detention may be substituted for one day of imprisonment. *See id.* § 5C1.1(e).

**6.** 18 U.S.C. § 3553(c)(2) requires that the district court state in open court the reason for imposing a sentence that is outside the applicable *guideline range.*

**7.** The government bases these figures on an estimate that the volume of commerce affected was $5,786,250.00 for the period of Mr. Pippin's involvement in the bid-rigging conspiracy.

**8.** Government counsel argued in a letter dated October 24 to the probation officer who prepared the presentence report, that the report

incorrectly computed the applicable fine range. Because this letter was attached to the final presentence report and raised an issue of material fact as to the correct fine range, the district court should have made explicit findings on this issue. *See United States v. Wise,* 881 F.2d 970, 972 (11th Cir.1989) (noting that "the court must resolve all factual and legal disputes raised in the addendum to the presentence report").

**9.** Although the $25,000.00 fine was imposed in a manner inconsistent with the Guidelines, the district court correctly applied the Guidelines in requiring Mr. Pippin to pay the costs of community confinement and supervised release, *see* Guidelines § 5E4.2(i), and a $50.00 special assessment, *see* Guidelines § 5E4.3.

and its failure either to sentence within the Guidelines or to give any reasonable justification for sentencing outside the Guidelines, we must remand for resentencing. *See* 18 U.S.C. § 3742(f)(1), (2) (1988).

### 2.

A few additional comments should be made to address fully arguments raised by the government concerning application of the Guidelines on remand.

■ The government contends that the Sentencing Commission did not intend for probation with community service to be substituted for imprisonment in sentencing antitrust offenders such as Mr. Pippin. In support of its argument, the government points out guideline commentary noting that antitrust violations "can cause serious economic harm," Guidelines § 2R1.1 commentary (background), that "the most effective method to deter individuals from committing [antitrust violations] is through imposing short *prison sentences* coupled with large fines," *id.* (emphasis added),[10] and "that alternatives such as community confinement not be used to avoid imprisonment of antitrust offenders," *id.* at commentary n. 5.

We reject the contention that probation with community confinement cannot be imposed here. The plain meaning of the Guidelines is that the district court has the options of *either* imposing imprisonment *or* substituting an alternative punishment such as probation with community confinement. *See supra* note 5. It was not the result of oversight that the Sentencing Commission allowed probation with community confinement to be an alternative to imprisonment in cases such as this one. After extensive study of white-collar criminal sentencing, the Sentencing Commission made a deliberate decision to permit district courts to sentence defendants such as Mr. Pippin to probation with community confinement in lieu of imprisonment. *See generally* Breyer, *The Federal Sentencing*

*Guidelines and the Key Compromises Upon Which They Rest,* 17 Hofstra L.Rev. 1, 20–21 (1988) (author, who was a member of the Sentencing Commission, discussing the Commission's study of white-collar offenses and noting that "[f]or offense levels '7' through '10,' which carry minimum prison terms of one to six months, the court may substitute probation for a prison term, but the probation must include . . . community confinement").

The guideline commentary cited by the government is not intended to restrict the district court's sentencing options *within* the Guidelines. This commentary is instead meant to dissuade sentencing judges from *departing below* the Guidelines. *See generally* T. Hutchison & D. Yellen, *Federal Sentencing Law and Practice* 233 annot. n. 4 (1989) (interpreting application note 5 and background note to Guideline § 2R1.1 as making "it harder for courts to depart downward if the downward departure results in the defendant not serving some time in prison and paying a large fine"). Because the district court can impose probation with community confinement in this case without departing from the Guidelines, the commentary cited by the government is not an obstacle for the district court if it decides on remand to sentence Mr. Pippin to probation with community confinement in lieu of imprisonment.

■ The government also contends that the district court cannot impose a sentence of probation with community confinement in lieu of a prison sentence for an antitrust offender unless the court gives a "clearly articulated and reasonable justification" for not imposing imprisonment. Again we disagree with the government's position. Although 18 U.S.C. § 3553(c) requires the sentencing judge to "state in open court the reasons for its imposition of the particular sentence," 18 U.S.C. § 3553(c) (1988), the district court need not provide reasons for "imposing a sentence at a particular

---

**10.** We note that the government is being somewhat inconsistent in its reliance upon this commentary, for while arguing that Mr. Pippin should be given a prison sentence (a position

for which the commentary might provide some support), the government is also requesting that no fine be imposed (a position that would seem to contradict the commentary).

point within the [applicable guideline] range" if this range is less than twenty-four months, *see id.* § 3553(c)(1). *See also, e.g., United States v. Howard,* 894 F.2d 1085, 1092 (9th Cir.1990); *United States v. Ehret,* 885 F.2d 441, 445 (8th Cir.1989). In this case the applicable range spans only six months; thus it appears that as long as the district court sentences within this range, then the court need not give any reason for choosing one form of punishment over another. When, as here, a sentence of probation with community confinement can be imposed within the applicable guideline range, then the district court need not offer any explanation for imposing this sentence in lieu of imprisonment. We would add, however, that even though the sentencing judge may not be required by law to give reasons for his choice within the guideline range in a case such as this one, it is wise as a matter of policy for the judge always to inform the defendant and government of the rationale for every major aspect of the sentence imposed.

■ Another argument made by the government is that its 5K1.1 motion can be limited to allow the district court to depart from the Guidelines for the fine portion of the sentence but not for the length and type of incarceration. Section 5K1.1 provides that "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." Guidelines § 5K1.1 (policy statement). This section gives the government significant power over whether a defendant's assistance to the government will produce a departure from the Guidelines, for unless the government makes a 5K1.1 motion, the sentencing court has no power to make a departure based upon such assistance. *See, e.g., United States v. Alamin,* 895 F.2d 1335, 1337 (11th Cir.1990).[11]

Government counsel should keep in mind, however, that " 'the only authority "delegated" [to the government] by [§ 5K1.1] ... is the authority to *move* the district court for a reduction of sentence in cases in which the defendant has rendered substantial assistance.' " *United States v. Francois,* 889 F.2d 1341, 1344 (4th Cir.1989) (quoting *United States v. Musser,* 856 F.2d 1484, 1487 (11th Cir.1988)) (emphasis in original). Once it has made a 5K1.1 motion, the government has no control over whether and to what extent the district court departs from the Guidelines, except that if a departure occurs, the government may argue on appeal that the sentence imposed was "unreasonable," *see* 18 U.S.C. § 3742(e) (1988). *Cf. United States v. Wilson,* 896 F.2d 856, 859 (4th Cir.1990) (holding that once government made a substantial-assistance motion under 18 U.S.C. § 3553(e), there was no lower limit on court's authority to depart from statutory minimum sentence and the only limit on the court's discretion was that the sentence be "reasonable").

The government's power to make a 5K1.1 motion exists not to allow the government to determine the appropriate sentence for the defendant. Rather, the government has this authority because it "is in the best position to supply the court with an accurate report of the extent and effectiveness of the defendant's assistance." *White,* 869 F.2d at 829; *accord United States v. Grant,* 886 F.2d 1513, 1514 (8th Cir.1989). By arguing that its 5K1.1 motion can be limited to the fine only, the government is attempting to expand its 5K1.1 power from that of determining whether substantial assistance has occurred, to that of determining the actual sentence to be imposed. In the absence of explicit language in section 5K1.1 authorizing the government to limit its motion to only a portion of the defendant's sentence, we are unable to conclude that this section

---

11. The *Eighth Circuit may not completely agree* with this conclusion, however, and has noted that there may be an exceptional case in which "a defendant's clearly established and recognized assistance to authorities" would allow a court to grant a 5K1.1 departure, notwithstanding the government's failure to file a motion. *See United States v. Justice,* 877 F.2d 664, 668–69 (8th Cir.1989); *United States v. Sutherland,* 890 F.2d 1042, 1043 (8th Cir.1989).

gives the government such broad discretion.

## III.

Having found that the Guidelines govern Mr. Pippin's sentencing but were misapplied by the district court, we remand for resentencing. The district court may sentence within the Guidelines, or it may depart from the Guidelines pursuant to Guideline § 5K1.1 for either the fine or the incarceration portion of the sentence provided that it gives adequate reasons for such departure. We note that the defendant has completed the term of community confinement imposed at his first sentencing. This service, as well as any fines already paid by Mr. Pippin, may be credited towards the sentence imposed upon remand.

VACATED and REMANDED.