[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 17, 2008
THOMAS K. KAHN
CLERK

_____

No. 06-12070

_____

D. C. Docket No. 88-01026-CR-1-MMP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHARLES L. DAVIS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(January 17, 2008)**

Before BLACK, HULL and FAY, Circuit Judges.

PER CURIAM:

Charles L. Davis voluntarily surrendered to authorities 16 years after he was indicted for participating in a drug smuggling conspiracy. After surrendering, he pled guilty to two conspiracy charges and fourteen substantive charges related to narcotics smuggling.[1] He was sentenced to a total of 120 months' imprisonment. On appeal, Davis argues he was incorrectly sentenced under the Sentencing Reform Act of 1984 in violation of the *Ex Post Facto* Clause of the Constitution, art. I, § 9, cl. 3 with respect to Counts 2 and 3 of the Indictment.[2] We agree Davis should not have been sentenced as to Counts 2 and 3 under the Sentencing Reform Act and accordingly vacate his sentence with respect to those counts, and remand for resentencing under the pre-Guidelines standard.[3] We affirm the reasonableness and the manner in which the remaining sentences were imposed under the pre-Guidelines standard.

---

[1] Davis pled guilty to conspiracy to import controlled substances, in violation of 21 U.S.C. § 963; conspiracy to distribute and to possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846; importation of marijuana and hashish oil, in violation of 21 U.S.C. § 952; possession with intent to distribute marijuana and hashish oil, in violation of 21 U.S.C. § 841; and traveling in foreign commerce with the intent to carry on an illegal activity, in violation of 18 U.S.C. §§ 2 and 1952(a)(3).

[2] Davis also challenges his sentences that were imposed under the pre-Guidelines standard. He argues they are unreasonable, and he contends the district court failed to sufficiently articulate its reasons for the sentences it imposed. Having reviewed the briefs and the record, we are satisfied these sentences were imposed without error.

[3] We do not address Davis's alternative arguments with respect to Counts 2 and 3 as our decision to vacate and remand for resentencing renders them moot.

# I. BACKGROUND

The essential facts of this case are not in dispute. The case arises out of a large scale drug smuggling conspiracy that began in the mid-1970s and involved the importation of controlled substances from various countries in and around the Caribbean to be distributed inside the United States and Canada. See *United States v. Knowles*, 66 F.3d 1146, 1150-52 (11th Cir. 1995), for a description of the larger conspiracy. Charles Davis was recruited to join the conspiracy while working at a boatyard in Ft. Lauderdale, Florida. Terrence Fitzwater, one of the leaders of the conspiracy, recruited Davis to assist with the sailing of smuggling vessels between the Carribean and Florida.[4] Davis's role involved intermittently working as a boat mechanic to ensure the serviceability and seaworthiness of vessels used to smuggle marijuana.

In November 1986, Davis agreed to captain the *Suntimes*. The boat was loaded with marijuana in Jamaica in preparation for its journey to the coast of Florida. Davis set sail in the *Suntimes* from Jamaica, but soon learned law enforcement had seized a coconspirator's boat, the *Mad Dog II*. Panicked, Davis redirected the *Suntimes* to Cozumel, Mexico, contacted Fitzwater, and told him he

---

[4] Some of the smuggling vessels used in the conspiracy were sailboats, outfitted with hidden compartments, that departed from and returned to ocean-access waterfront homes along the Southeastern and Western coasts of Florida. *See Knowles*, 66 F.3d at 1151-52.

refused to take the boat and its illicit cargo any farther. Fitzwater was forced to hire a new crew to complete the ship's voyage to Florida. The *Suntimes* and its replacement crew were intercepted by law enforcement upon arriving in Destin, Florida in February 1987; the shipment of marijuana was seized and the crew arrested.[5]

At the time of the seizure, Davis was also in Destin, Florida, at the request of Fitzwater, to make sure the arriving *Suntimes* was seaworthy for its return to Ft. Lauderdale. In response to the intervention by law enforcement, Fitzwater instructed everyone to "lay low." Several weeks later, Fitzwater instructed Davis to meet him in Miami. During their meeting, Fitzwater told Davis they needed to disappear and said he would provide him with false identification. Fitzwater asked Davis to use the fake identity to meet him in St. Maarten and suggested they might sail to South America.

Davis feared Fitzwater planned to have him killed. He agreed to the meeting in St. Maarten with no intention of attending. Instead of meeting Fitzwater in St. Maarten, Davis fled and cut off all communications with anyone involved in the conspiracy. He assumed the fake identity of "John Fullerton," moved to St.

---

[5] Around this time a third of the group's sailboats, the *Freeflight*, was also targeted and seized by law enforcement. *See Knowles*, 66 F.3d at 1152.

Thomas, where he obtained lawful employment, and later reestablished himself in Maryland. Davis never again spoke to any of his former coconspirators.

On November 1, 1987, roughly eight months after Davis's final meeting with Fitzwater, the Sentencing Guidelines went into effect. *See United States v. Pippin*, 903 F.2d 1478, 1480 (11th Cir. 1990). While Davis remained at large, law enforcement prosecuted many coconspirators who had played similar and more prominent roles than Davis in the drug smuggling operation. Three of these coconspirators, Michael Knowles, James Squires, and Daniel Wright, were ultimately sentenced under pre-Guidelines law. *See Knowles*, 66 F.3d at 1164. Knowles was an attorney who represented conspiracy members and became involved in the conspiracy himself. Squires and Wright were former police officers who operated one of the smuggling vessels and participated in smuggling activities. *Id.* at 1152-54. Other coconspirators were sentenced under the Guidelines after the development of new facts.

On September 20, 2004, 16 years after the filing of the original indictment, Davis contacted the U.S. Attorney's Office, through counsel, and arranged to voluntarily surrender. Davis negotiated a plea agreement in which the parties stipulated, "there is no evidence to demonstrate the defendant's continued

5

participation in the criminal conduct underlying the charged conspiracies following the last overt act charged . . . on or about February 3, 1987."

Prior to sentencing, the parties disagreed over whether Davis was to be sentenced under the Sentencing Reform Act or the pre-Guidelines regime. The district court ordered briefing and held an evidentiary hearing. At the hearing, Agent Moon, a DEA investigator, testified that although Davis's involvement in the conspiracy ended in February 1987, the conspiracy itself extended into 1988. The district court, citing testimony from the trial of a coconspirator who was prosecuted after Knowles, Squires, and Wright, concluded the law of the case dictated the conspiracy continued beyond November 1, 1987. The court went on to conclude Davis remained part of the conspiracy after that date and, accordingly, was subject to the Sentencing Guidelines and not eligible for parole with respect to the conspiracy charges (Counts 2 and 3 of the Indictment). Davis was sentenced to a total of 120 months' imprisonment.

## II. DISCUSSION

The Sentencing Reform Act of 1984, Pub. L. 98-473, 98 Stat. 1837, and the abolition of parole apply only to crimes committed after November 1, 1987, the date the Sentencing Guidelines became effective. *See Walden v. U.S. Parole Comm'n*, 114 F.3d 1136, 1138 (11th Cir. 1997); *United States v. Pippin*, 903 F.2d

1478, 1480 (11th Cir. 1990). Continuing crimes, such as conspiracy, that began before and continued after the effective date, are subject to the act and are sentenced under the Sentencing Guidelines. *United States v. Diaz*, 190 F.3d 1247, 1257 (11th Cir. 1999). Thus, Davis may only be sentenced under the Guidelines if he took part in a crime that continued beyond November 1, 1987.

Davis contends he should not have been sentenced under the Guidelines. Given the scope of his involvement in the conspiracy—an intermittent boat mechanic and captain—he claims he could not have reasonably foreseen the conspiracy would continue after the boats he worked on had been seized, the conspirators dispersed, his participation ceased, and he permanently cut off all communications with members of the conspiracy. In support of this contention Davis relies on *United States v. Peeples*, 23 F.3d 370 (11th Cir. 1994). Davis also notes that because he feared for his life, he faced limited options for withdrawing from the conspiracy.

The Government does not distinguish *Peeples,* but instead argues Davis should be held accountable for the continuing acts of the conspiracy because he failed to take sufficient affirmative steps to withdraw. While the Government concedes Davis did not actively participate in the conspiracy after the effective date of the Sentencing Reform Act, and further conceded at oral argument that

7

Davis's liability for conspiratorial acts ceased at some point while he was in hiding, it contends cessation did not occur during the first eight months of Davis's disappearance, but rather at some later date.

Under the facts of this case, *Peeples* is analogous and persuasive. As a general proposition, a conspirator is responsible for all the reasonably foreseeable acts of his coconspirators that are done in furtherance of the conspiracy. *Peeples*, 23 F.3d at 373. The scope of an agreement to participate in a conspiracy must be determined on an individual basis for each defendant, while taking into account the context of the particular conspiracy. *Id.*

*Peeples* involved a drug smuggling conspiracy to import narcotics by airplane to an airstrip located on the Peeples Ranch. *Id.* at 371. The conspiracy spanned from 1979 to 1990. *Id.* In *Peeples*, this Circuit was called on to determine whether the Guidelines should apply to the sentences of several individuals convicted for participating in the smuggling conspiracy at various levels and at various dates. Under the circumstances of that case, we evaluated the scope of each individual's agreement to participate in the conspiracy with reference to actual evidence of continued involvement. *See id.* at 373-74 ("[A]ctual evidence of continued involvement in a specific activity is the most reliable indicator of the time frame that each participant remained actively engaged

in the conspiracy."). "A measure of the duration of criminal involvement, if not based on actual individual agreement and activity, would impose an indefinite standard beyond the evidence of guilty conduct." *Id.* at 374.

With respect to two of the individuals in *Peeples* who only participated in smuggling activities *prior* to the effective date of the Guidelines, we found "[c]essation of activity and no evidence of further agreement or conduct . . . lends no support to finding reasonable foreseeability regarding an indefinite continuation of their involvement in the conspiracy." *Id.* We also noted the conspiracy had "sporadic and unpredictable episodes, with little foreseeability or opportunities to express intent to withdraw." *Id.* Thus, we found it was error to sentence these individuals under the Guidelines because their agreements to participate in the conspiracy had not been proven to extend beyond November 1, 1987. *Id.*

One of the individuals in *Peeples*, Fred Borgardt, played a strikingly similar role to that of Davis: Borgardt conducted maintenance on one of the smuggling planes, worked on the ground crew, and delivered marijuana by truck. *Id.* at 373. Borgardt participated in the conspiracy twice, the last time being two years prior to the effective date of the Guidelines. *Id.* These actions alone were insufficient to demonstrate a continuation of Borgardt's pattern of illegal conduct through the effective date. Thus, we concluded he was sentenced in error. *Id.* at 374.

9

Here, Davis, an intermittent boat mechanic and captain, ceased participating in the smuggling conspiracy after the boats he worked on were seized in February 1987. The Government stipulated there was no further evidence of Davis's continued participation. In fact, Davis played a similar role in the conspiracy as Knowles, Squires, and Wright, all of whom were sentenced under the pre-Guidelines standard. Moreover, Davis can hardly be said to have evidenced any further agreement to participate in the conspiracy when, fearing for his life, he deserted Fitzwater, fled, and permanently cut off all communications with members of the conspiracy.

Davis's participation in the conspiracy ceased prior to the effective date. There is a lack of evidence sufficient to support a finding that Davis could have reasonably foreseen an indefinite commitment to the conspiracy. *Cf. Peeples*, 23 F.3d at 374. Under the facts of this case, holding Davis responsible for acts of the conspiracy that happened over eight months after he ceased all participation, is tantamount to holding him to an "indefinite standard beyond the evidence of guilty conduct." *Id.* We conclude Davis should not have been sentenced under the Sentencing Reform Act.

III.  CONCLUSION

We vacate Davis's sentence as to Counts 2 and 3 and remand for resentencing in accordance with the pre-Guidelines law.  We affirm the reasonableness and the manner in which the remaining sentences were imposed.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**