UNITED STATES of America,
Plaintiff–Appellee,

v.

**Gary Patrick WATFORD,**
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

**Austin Carven GANT, a/k/a Joe,**
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

**David Lee WILLIAMS,**
Defendant–Appellant.

Nos. 88–5197 to 88–5199.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 6, 1989.

Decided Jan. 16, 1990.

Rehearing and Rehearing In Banc
Denied Feb. 15, 1990.

Michael Ian Gilbert (Gilbert & Babus, Gary Alan Rubard, Janus & Rubard, John L. Calhoun, Towson, Md., on brief), for defendants-appellants.

Thomas Francis O'Neil, III, Asst. U.S. Atty., Baltimore, Md. (Breckinridge L. Willcox, U.S. Atty., Washington, D.C., David P. King, Asst. U.S. Atty., on brief), for plaintiff-appellee.

Before SPROUSE and WILKINS, Circuit Judges, and BRITT, Chief United States District Judge for the Eastern District of North Carolina, sitting by designation.

WILKINS, Circuit Judge:

Gary Patrick Watford, Austin Carven Gant a/k/a "Joe", and David Lee Williams appeal their convictions and sentences for conspiracy to commit mail fraud, substantive mail fraud, and interstate transportation of stolen property. 18 U.S.C.A. § 371 (West 1966); 18 U.S.C.A. § 1341 (West 1984); 18 U.S.C.A. § 2314 (West Supp. 1989). All three appellants contend that there was not sufficient evidence to support the verdict of the jury and that the district court erred in imposing consecutive sentences for the conspiracy convictions. In addition, appellant Williams contests the finding of the district court that his sentence for the conspiracy count was governed by the sentencing guidelines and he claims that the district court erred in admitting certain "prior bad acts" testimony over his objection. We affirm.

I.

From September 1986 through April 1988, a group of inmates at the Mississippi State Penitentiary in Parchman, Mississippi, along with a group of individuals in Baltimore, Maryland, engaged in a scheme to defraud numerous individuals. The government alleged that Watford was the leader of the organization and Gant and Williams were his partners. Eight others were also indicted; one was granted a severance and the other seven pled guilty before the trial began. The fraud involved the purchase by other inmates, their friends and relatives, of United States Postal Service money orders having face

values ranging from $1.00 to $5.00. The money orders were then smuggled into the Mississippi State Penitentiary where they were professionally altered by inmates to show values of $500 to $700. The inmates then contacted various individuals by placing or responding to advertisements in homosexually-oriented magazines. The inmates wrote to the individuals claiming that they were homosexual, wealthy, in prison for a minor offense, and would come to live with them upon their impending release. The inmates also wrote that they needed money to bribe a judge or prosecutor to get out of prison. The victim was then asked to cash the forged money orders and forward the cash to a third person acting on behalf of the inmates.

Watford and Gant were each convicted of one count of conspiring to commit mail fraud, six counts of mail fraud, and two counts of interstate transportation of stolen property. Williams was convicted of one count of conspiracy, two counts of mail fraud, and two counts of interstate transportation of stolen property. The district court sentenced Watford to five- and ten-year terms of imprisonment on the counts of substantive mail fraud and interstate transportation of stolen property. By ordering that some sentences be served concurrently and some consecutively, the total sentence on these counts was thirty-five years. These counts represented criminal conduct committed before November 1, 1987 and thus were not subject to the Sentencing Reform Act of 1984, 18 U.S.C.A. §§ 3551, *et seq.* (West 1985 & Supp.1989), and the sentencing guidelines promulgated by the United States Sentencing Commission. As to the conspiracy count, the district judge sentenced Watford under the sentencing guidelines to a five-year term of imprisonment to be served consecutively to the thirty-five year term imposed for the criminal conduct identified in the substantive counts. By this same approach, Gant and Williams were each sentenced to fifteen years on the substantive counts; like Watford, they each were sentenced on the conspiracy count to five years consecutive to their other sentences.

## II.

### A.

▮ All appellants contend that the district court erred in directing that the sentence for conspiracy be served consecutively to the sentences for the substantive counts. If the conduct underlying the conspiracy count had occurred prior to November 1, 1987, the issue could be resolved easily. For prior to the effective date of the guidelines, judges, subject to few limitations not applicable here, were given unbridled discretion in fashioning a sentence. *See United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972); *United States v. Schocket,* 753 F.2d 336, 341 (4th Cir.1985). But, since the conspiracy count encompassed conduct which occurred after November 1, 1987, the sentence imposed for this count was governed by the provisions of the Sentencing Reform Act and the guidelines promulgated by the United States Sentencing Commission, specifically U.S.S.G. § 2X1.1 *United States v. White,* 869 F.2d 822, 826 (5th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989); *United States v. Tharp,* 884 F.2d 1112, 1113–16 (8th Cir. 1989).

We begin our analysis with 18 U.S.C.A. § 3584 (West 1985) which states:

**(a) Imposition of concurrent or consecutive terms.**—If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt. Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively....

**(b) Factors to be considered in imposing concurrent or consecutive terms.**— The court, in determining whether the terms imposed are to be ordered to run

concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a).

Thus, as a general rule, subsection (a) continues the past practice of leaving it to the discretion of the sentencing judge to determine whether sentences should run concurrently or consecutively. Our analysis is complicated by the provisions of subsection (b) which incorporate by reference the sentencing factors set forth in 18 U.S.C.A. § 3553(a) to guide courts in exercising their discretion under subsection (a). Among these factors are the guidelines and/or policy statements of the Sentencing Commission. 18 U.S.C.A. §§ 3553(a)(4) and (5) (West 1985). In a parallel provision in 28 U.S.C.A. §§ 994(a)(1)(D) and (*l*)(2) (West Supp.1989), the Commission is instructed to:

> promulgate and distribute to all courts of the United States and to the United States Probation System—
>
> (1) guidelines, as described in this section, for use of a sentencing court in determining the sentence to be imposed in a criminal case, including—
>
> . . . .
>
> (D) a determination whether multiple sentences to terms of imprisonment should be ordered to run concurrently or consecutively. . . .

Section 994(*l*)(2) provides further that:

> [t]he Commission shall insure that the guidelines promulgated ... reflect ... the general inappropriateness of imposing consecutive terms of imprisonment for an offense of conspiring to commit an offense or soliciting commission of an offense and for an offense that was the sole object of the conspiracy or solicitation.

■ To meet this congressional directive the Commission promulgated U.S.S.G.

§ 3D1.2 which provides in part that counts which identify "substantially the same harm shall be grouped together into a single Group." Subsection (b)(1) of section 3D1.2 includes within this grouping a "count charging conspiracy or solicitation and a count charging any substantive offense that was the sole object of the conspiracy or solicitation." The practical effect of this guideline is to make the sentence for conspiracy concurrent with the sentence for the substantive act if the substantive act was the sole object of the conspiracy (assuming the substantive count carries a sufficiently high statutory maximum to accommodate the total guideline punishment). *See* U.S.S.G. § 5G1.2(c) and (d).

Had the criminal conduct identified in the substantive counts been committed after November 1, 1987, all counts would have come under the umbrella of the Sentencing Reform Act and would have been subject to the Act's policies and the sentencing guidelines. If that had been the case, the guidelines would have determined a combined sentencing range in the following manner. First, an adjusted offense level would have been determined for each of the substantive counts using the principles of Relevant Conduct, U.S.S.G. § 1B1.3, and the offense conduct guideline for fraud, section 2F1.1.[1] Here, since each act of fraud was part of a common scheme or plan, section 1B1.3(a)(2) provides that the entire amount of money taken in the fraudulent scheme should be considered in determining the offense level for each count under section 2F1.1.

Second, under Relevant Conduct principles, the offense level for the conspiracy count that encompassed the substantive acts would be determined, under section 2X1.1 and section 2F1.1, again according to the total amount of money derived from the fraudulent activity.[2]

---

1. Other adjustments set forth in Chapter Three of the Guidelines Manual would, if applicable, affect the adjusted offense level.

2. Since Relevant Conduct is a real offense concept, it encompasses criminal activity in the entirety of a common scheme regardless of whether the conduct occurred before or after November 1, 1987, the effective date of the guidelines. However, only counts of conviction that occur, in whole or in part, after that date are subject to a guidelines sentence.

Next, the guidelines for combining multiple counts operate to accomplish two key objectives of the Sentencing Reform Act: (1) the avoidance of double punishment for what is in essence the same criminal conduct (*e.g.*, a conspiracy offense and a substantive offense that was the sole object of the conspiracy, as explained above), and (2) an incremental increase in punishment for each offense of conviction that embodies significant additional criminal conduct.[3] In this instance, section 3D1.2(b) would provide for grouping or merging all of the substantive counts together and for the grouping of the conspiracy with the substantive counts. This would produce a single, combined offense level for all of the counts. After determining the defendant's criminal history score under Chapter Four, the sentencing table in Chapter Five, Part A, would be consulted to determine the sentencing guidelines range for the combined offense conduct. If a sentence of imprisonment is called for, U.S.S.G. § 5G1.2 provides the manner in which the sentence of imprisonment is to be imposed on each count of conviction. The effect of section 5G1.2, in conjunction with section 3D1.2, requires that a sentence on a conspiracy count shall run concurrently with the sentence on substantive counts that were included within the conspiracy, except to the extent necessary to produce a sentence within the appropriate sentencing guidelines range.

Here, of course, the situation is complicated by the fact that the substantive counts deal with criminal acts committed before November 1, 1987, to which the guidelines are not applicable. The conspiracy count is subject to application of the guidelines and encompasses criminal conduct which includes the conduct described in those substantive counts and other uncharged related conduct occurring before and after November 1, 1987.

As indicated above, in determining an appropriate guidelines sentence for the conspiracy count, the principles of Relevant Conduct (section 1B1.3) and U.S.S.G. §§ 2X1.1 and 2F1.1 should be applied to determine an offense level based on the entire amount of money taken in the fraudulent scheme regardless of whether the money is identified in a count of conviction. During the sentencing hearing, and contrary to the correct application of the guidelines, the district court stated that it would only consider the counts of conviction in calculating the sentencing guidelines range and would not consider the total amount of money fraudulently obtained, a decision from which the government does not appeal. By using this incorrect approach Watford's sentencing guidelines range was calculated to be 57 to 71 months, Williams' to be 51 to 63 months, and Gant's to be 33 to 41 months. Had the guidelines been correctly applied, it is apparent from the record that the sentencing guidelines ranges of all appellants would have been higher and Gant's range would have at least reached the statutory maximum sentence of 60 months. *See* 18 U.S.C.A. § 371 (West 1966). Of course, when this occurs U.S.S.G. § 5G1.1(a) caps the sentence at the statutory maximum.[4]

In any event, since the conspiracy count was the only count subject to the sentencing guidelines and the dictates of the Sentencing Reform Act, that is as far as the guidelines can reach in their requirements. As we have recognized, the sentencing court has unfettered discretion to impose sentences on pre-guidelines counts consecutively or concurrently. And nothing in the guidelines or the Sentencing Reform Act precludes the court from ordering that a sentence imposed on a pre-guidelines count be served consecutively to a sentence imposed on a guidelines count.

Granted, it would have been more in keeping with the intent of the Act and the

**3.** *See* 28 U.S.C.A. § 994(*l*)(1); U.S.S.G. Ch. 3, Pt. D, intro. comment.

**4.** The court sentenced all appellants to 60 months on the conspiracy count by reducing Watford's sentence to the statutory maximum sentence; sentencing within Williams' sentencing guidelines range, albeit understated; and, after stating various reasons, departed upward in Gant's case, a decision he does not contest on appeal.

sentencing guidelines to correctly apply Relevant Conduct (section 1B1.3) and impose a sentence on the conspiracy count consecutively only to the extent necessary to provide an incremental increase in punishment for that portion of the total criminal activity not included and punished in the sentence on the substantive counts. But, we cannot say that the court's use of its concurrent/consecutive authority to fashion what it considered an appropriate sentence, taking into account the difference between pre-guidelines sentences for which parole is available and guidelines sentences for which it is not, was erroneous. The limits of our authority to review a sentence imposed pursuant to the Sentencing Reform Act of 1984, 18 U.S.C.A. §§ 3551, *et seq.* (West 1985 & Supp.1989), and reverse and remand for resentencing, are set forth in 18 U.S.C.A. § 3742(f) (West Supp.1989). Specifically, we may reverse the district court if the guidelines sentence was imposed in violation of law, imposed as a result of an incorrect application of the guidelines, an unreasonable departure from the guidelines range, or imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable. Except for the incorrect application of the guidelines which did not prejudice the appellants and from which no appeal was taken, the guidelines sentences for conspiracy violated none of these prohibitions. Consequently, the decision of the district court may not be disturbed.

### B.

■ All appellants also contend that the evidence was not sufficient to support their convictions for mail fraud. Specifically, they argue that the circumstantial evidence was not sufficient to link them to the mail fraud of victim Frederick L. Winters. They point to the facts that, after the first telephone call to Winters, Gant was removed from the unit at the Mississippi State Penitentiary from which the mail fraud originated, and that there are factual differences between the method by which Winters was defrauded and the methods of Watford's organization. Further, they claim that the voice identifications of telephone tape recordings of Watford and Gant were unreliable.

In reviewing the sufficiency of the evidence on appeal, we are required to view the evidence in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). Measured against this standard, the evidence abundantly supports the verdict of the jury. Winters identified the voices on the tape recordings as those of the men who defrauded him. Another witness then testified that the voices were those of Watford and Gant. In linking Williams to the conspiracy, one witness testified that Watford told him that he and Williams were partners. Another witness testified that he overheard Williams, Gant, and Watford discussing the money order scheme. Moreover, the appellants concede that the fraud perpetrated on Winters, while not identical to their other schemes, followed the general pattern of the schemes employed by Watford's organization.

### III.

### A.

■ Appellant Williams argues that his sentence for conspiracy should not have been imposed under the sentencing guidelines since there is no criminal conduct ascribed to him after May 15, 1987, the date of his parole from the Mississippi State Penitentiary. Since the sentencing guidelines apply only to offenses completed after November 1, 1987, Williams contends that they should not apply to his sentence on the conspiracy count.

Williams' argument lacks merit for the government established the existence of the conspiracy in which he was involved and that the conspiracy did not terminate until after November 1, 1987. Although Williams contends that he was not part of the conspiracy after May 15, 1987, the burden is on Williams to show that he withdrew from the conspiracy by affirmative action. *United States v. Urbanik,* 801 F.2d 692, 697 (4th Cir.1986). At trial Williams offered no evidence to show that he withdrew from the conspiracy and, at

the sentencing hearing, relied only on the fact that he was acquitted of a substantive offense that was alleged to have been committed after November 1, 1987. We agree with the district court that this fell far short of establishing withdrawal. *Id.* Finally, the district court correctly used a preponderance of the evidence standard in determining that criminal conduct in furtherance of the conspiracy occurred before and after November 1, 1987, and was conduct for which Williams should be held accountable at sentencing. *United States v. Urrego–Linares*, 879 F.2d 1234, 1238 (4th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 346, 107 L.Ed.2d 334 (1989).

### B.

■ Williams also argues that the district court erred in admitting testimony regarding certain "prior bad acts" committed by him. At trial the government called Williams' mother to testify concerning a letter she received from Williams in January 1984 requesting her to cash enclosed postal money orders which had been altered in the manner earlier described. The district court admitted her testimony, the letter, and the money order which she had cashed. The district judge, following the language of Rule 404(b) of the Federal Rules of Evidence, instructed the jury that this evidence was being admitted only against Williams, stating that "[e]vidence of certain other acts done by a defendant may be admitted not to prove the character of the person, in order to show that he acted on this occasion in conformity with the character, but may be considered by you as proof of, for example, motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of any mistake or accident, and those are the only purposes for which you may consider this."

Williams asserts that the district court erred in admitting this testimony of prior bad acts since it concerned uncharged misconduct. He also argues that the probative value of this testimony was substantially outweighed by the unfair prejudice it created. Finally, he contends that the letter should have been excluded as irrelevant, and was so remote in time as to render it legally irrelevant. The government argues that the evidence was admissible to show Williams' knowledge of the scheme to defraud.

Rule 404(b) provides that evidence of prior bad acts is not admissible to prove conduct in conformity therewith, but is admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Fed.R. Evid. 404(b). This court has held that Rule 404(b) is an inclusive rule that allows admission of evidence of other acts relevant to an issue at trial except that which proves only criminal disposition. *United States v. Masters*, 622 F.2d 83, 85 (4th Cir.1980). Whether to admit evidence under Rule 404(b) is within the discretion of the district court, *United States v. Ramey*, 791 F.2d 317, 323 (4th Cir.1986), and, here, the district court did not abuse its discretion. It was properly admitted under Rule 404(b) to show Williams' knowledge of the scheme and to show the existence of a common plan or scheme. *See United States v. Billups*, 692 F.2d 320, 328 (4th Cir.1982) (evidence of other bribes admissible to show common plan or scheme in bribery prosecution), *cert. denied*, 464 U.S. 820, 104 S.Ct. 84, 78 L.Ed.2d 93 (1983); *United States v. Powell*, 407 F.2d 582, 585 (4th Cir.) (counterfeiting prosecution; evidence of prior instances where defendant passed counterfeit bills admissible to show common plan or scheme), *cert. denied*, 395 U.S. 966, 89 S.Ct. 2113, 23 L.Ed.2d 753 (1969).

Williams' contention that the district court should have excluded the evidence because it was too remote in time is also without merit. The time between the commission of the prior act and the offenses here was well within that approved by decisions of this and other circuits. *See, e.g., United States v. Rawle*, 845 F.2d 1244, 1246–48 (4th Cir.1988) (evidence of defendant's involvement in interstate transportation of marihuana eight years prior to date at issue admissible as evidence of knowledge and participation in common scheme); *United States v. Franklin*, 704 F.2d 1183, 1189 (10th Cir.) (no abuse in admitting evidence of prior crimes four years before charged offense), *cert. denied*, 464 U.S. 845, 104 S.Ct. 146, 78 L.Ed.2d 137 (1983);

*United States v. Beahm,* 664 F.2d 414, 416–17 (4th Cir.1981) (evidence of similar criminal activity within three years admissible).

Williams' contention that the district court should have excluded the evidence because the risk of unfair prejudice outweighed the probative value is also without merit. The evidence was probative of Williams' intent and of a common scheme and the district court acted well within its discretion in admitting it. Additionally, the district court properly gave a limiting instruction which minimized any prejudice.

AFFIRMED.