914 F.2d 1492
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Roland Able GOMES, Defendant-Appellant.
 No. 89-7589.
 United States Court of Appeals, Fourth Circuit.
 Submitted March 15, 1990.
Decided Oct. 2, 1990.
As Amended Nov. 6, 1990.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Statesville. Robert D. Potter, Chief District Judge. (CR-88-38-ST-1)
 Fred Haddad, Fort Lauderdale, Fl., for appellant.
 Thomas J. Ashcraft, United States Attorney, Harry Thomas Church, Assistant United States Attorney, Charlotte, N.C., for appellee.
 W.D.N.C.
 AFFIRMED.
 Before ERVIN, Chief Judge, and DONALD RUSSELL and SPROUSE, Circuit Judges.
 PER CURIAM:
 
 
 1
 A jury found Roland Gomes guilty of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. Secs. 841(a)(1) and 846. Chief Judge Robert D. Potter sentenced Gomes to 240 months imprisonment. Gomes filed a motion for a new trial based upon newly discovered evidence which was denied. On appeal, Gomes argues that (1) the court erred in denying his motion for a new trial, (2) the evidence was insufficient to sustain the jury verdict, (3) the court erred by applying the Sentencing Guidelines to his case; and (4) the court erred by adjusting his sentence based upon his role in the offense. For the reasons stated below we affirm the convictions.
 
 I.
 
 2
 John Ervin Comer, a/k/a John Beck, headed a drug organization that brought more than thirty kilograms of cocaine into North Carolina. In April of 1987, Comer began buying cocaine in Ft. Lauderdale, Florida. Comer sold the cocaine to several people in North Carolina including Walter Vinson, William Benfield and Jerry Harris.
 
 
 3
 Comer was unhappy with the price that he was paying for cocaine, so Donnie Watson, a local musician employed at the City Limits nightclub in Ft. Lauderdale, agreed to try to find a cheaper source for Comer. Watson approached Gomes who was running the food concession at the City Limits Club. Gomes told Watson that he could beat the price Comer was paying. Beginning on or about September 1, 1987, Comer bought one kilogram of cocaine every two weeks from Gomes through Watson. In October the amount increased to two kilograms every two weeks. In November, Comer met Gomes at a party which Gomes was catering and they discussed cutting out Watson as the middleman and agreed to increase the cocaine from two to four kilograms every two weeks.
 
 
 4
 Gomes continued to supply cocaine to Comer through Watson until January of 1988. In January, Comer and two of his distributors, James Roberts and Lonnie Allen, were arrested when they sold cocaine to officers of the North Carolina State Bureau of Investigation and the Catawba County Sheriff's Department. Comer and Roberts agreed to cooperate. Information which they provided led to the arrest of Gomes.
 
 II.
 
 5
 All of Gomes' alleged co-conspirators pled guilty to charges of drug trafficking. Several of the conspirators, including Watson and Comer, testified against Gomes at his trial. Gomes argued in defense that they were pointing a finger at him to avoid pointing it at unindicted dangerous suppliers.
 
 
 6
 After trial, Gomes filed a motion, pursuant to Fed.R.Civ.P. 33, for a new trial based upon newly discovered evidence. He presented an affidavit dated December 22, 1988, from co-conspirator Stephen Rocco Cevoli, in which Cevoli states he provided the following information to Agent David Ramsey and Sergeant Tony Keller during an interview after his arrest: that Watson came to him to buy cocaine; that Watson told him that he had been purchasing cocaine from two or more Cubans in Miami at a cheaper price; that on no occasion did Watson ever say that he was buying drugs from Roland Gomes; that he had seen Watson sell drugs at the City Limits Club, but had never seen Roland Gomes sell drugs; that he had never heard that Gomes was selling drugs. Cevoli also stated that Watson wanted to hide the drugs from Gomes while at the Club because Gomes disliked drugs, but indicated that he had not made this last statement to Agents Ramsey and Keller.
 
 
 7
 Gomes also claimed upon information and belief that Comer told co-defendant Walter Vinson that Gomes was not a source of cocaine, that the source of cocaine was still located in Miami, and that Comer was afraid to identify the source. And, finally, Gomes provided the affidavit of one juror in which the juror states that "[h]ad the additional evidence ... been presented at trial in this matter, I probably would have changed my vote from guilty to not guilty."
 
 
 8
 In response to Gomes' motion, the government provided affidavits in which Ramsey and Keller state that Cevoli never made the statements in the Cevoli affidavit. The government also presented the court with an affidavit by Comer in which Comer states that "[a]t no time did [he] tell Walter Vinson or anyone else that Roland Gomes was not a source of the cocaine for the conspiracy...."
 
 
 9
 The decision whether to grant a new trial is in the discretion of the lower court and will be upset on appeal only if Gomes can show the court abused its discretion. See United States v. George, 568 F.2d 1064 (4th Cir.1978). In considering a motion for new trial based upon newly discovered evidence, the trial court "has broad power to weigh the evidence and assess the credibility of both the witnesses who testified at trial and those whose testimony constitutes new evidence." United States v. Wright, 625 F.2d 1017, 1019 (1st Cir.1980).
 
 
 10
 The trial court considered the evidence in light of the test provided in United States v. Williams, 415 F.2d 232 (4th Cir.1969). In Williams this court stated that the following are requirements for a motion for a new trial based upon newly discovered evidence:
 
 
 11
 (1) It must appear from the motion that the evidence relied on is, in fact, newly discovered, i.e. discovered after the trial; (2) the motion must allege facts from which the court may infer diligence on the part of the movant; (3) the evidence relied on must not be merely cumulative or impeaching; (4) must be material to the issues involved; and (5) must be such as, on a new trial, would probably produce an acquittal.
 
 
 12
 Id. at 233 (quoting Pitts v. United States, 263 F.2d 808 (2d Cir.), cert. denied, 360 U.S. 919 (1959)).
 
 
 13
 The lower court reviewed the affidavits and testimony at the hearing and made the factual determination that, based upon the testimony and demeanor of the witnesses, Ramsey was credible and that Cevoli did not make the exculpatory statements to the agents. The court also indicated that even if the Cevoli affidavit and alleged statements by Comer to Vinson were credible, the effect of the new evidence was only to undermine the testimony and credibility of the government's witness, whose testimony and credibility had already been tested at trial. The court also determined that Gomes had not shown that the newly discovered evidence, if admitted, probably would have produced an acquittal. Because we find that the trial court's findings are not clearly erroneous, we affirm the court's order denying a new trial.
 
 III.
 
 14
 Gomes argues that there is insufficient evidence that he joined the conspiracy with an understanding of its unlawful nature. He claims that the evidence establishes no more than a buyer-seller relationship between Gomes and others.
 
 
 15
 In reviewing a challenge to a jury verdict on the basis of sufficiency of the evidence, this court views the evidence and all reasonable inferences from the evidence in the light most favorable to the government and asks whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Glasser v. United States, 315 U.S. 60 (1942); United States v. Laughman, 618 F.2d 1067 (4th Cir.), cert. denied, 447 U.S. 925 (1980). In United States v. Collazo, 732 F.2d 1200, 1205 (4th Cir.1984), cert. denied, 469 U.S. 1105 (1985), this court explained that:
 
 
 16
 To sustain the conspiracy connection there need only be a showing that defendant knew of the conspiracy's purpose and some action indicating participation.... These elements can be shown by circumstantial evidence such as his relationship with other members of the conspiracy, the length of the association, his attitude, conduct and the nature of the conspiracy.
 
 
 17
 After reviewing the record, we find that there is ample evidence to support the verdict. There is testimony that Gomes sold large amounts of cocaine to Watson and at least one kilogram to Leighton. He also spoke with Comer about Watson's role in the cocaine transactions and about increasing the amount of cocaine supplied.
 
 IV.
 
 18
 Gomes also challenges his sentence. Gomes was charged with a conspiracy that began approximately April 1, 1987, and continued until about January 18, 1988. The Guidelines apply to cases occurring after November 1, 1987. Gomes claims that his crime was complete when he joined the conspiracy in August of 1987 and that the court thus erred by applying the Guidelines to his case.
 
 
 19
 Gomes failed to object below to the application of the Guidelines. Without deciding whether the failure to object waived this argument, we note simply that the Guidelines apply to conspiracies that continue beyond November 1, 1987. United States v. Sheffer, 896 F.2d 842 (4th Cir.1989) (petition for certiorari filed July 1990); United States v. Vinson, 886 F.2d 740 (4th Cir.1989), cert. denied, 110 S.Ct. 878 (1990); United States v. Watford, 894 F.2d 665 (4th Cir.1990).
 
 V.
 
 20
 The court adjusted Gomes' sentence upward by 3 points pursuant to Guidelines section 3B1.1 which provides:
 
 
 21
 Based on the defendant's role in the offense, increase the offense level as follows:
 
 
 22
 (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
 
 
 23
 Gomes argues, for the first time on appeal, that the court erred by increasing his base level from 34 to 37 for his role in the offense. Gomes waived this argument by failing to object at the sentencing hearing. United States v. Tibesar, 894 F.2d 317, 319 (8th Cir.1990) (petition for certiorari filed March 26, 1990).
 
 
 24
 AFFIRMED.