UNITED STATES of America, Appellee,

v.

Joseph Michael LINCOLN, a/k/a Mohammed Ali Ballagh Omer, Appellant.

No. 90–5172MN.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 16, 1990.

Decided Feb. 6, 1991.

Daniel M. Scott, Minneapolis, Minn., for appellant.

Henry J. Shea, Minneapolis, Minn., for appellee.

Before ARNOLD and MAGILL, Circuit Judges, and BENSON,* Senior District Judge.

ARNOLD, Circuit Judge.

Joseph Lincoln appeals his convictions for arson and mail fraud. A jury found that he burned down his grocery store and then tried to collect on his insurance. The District Court[1] sentenced Lincoln to ten years in jail for the arson and a year and nine months in jail for the mail fraud. Judge Murphy decided that the sentences should run consecutively. Lincoln was also fined $10,000 and ordered to make around $37,000 in restitution to his landlord and his landlord's insurance company. Lincoln assigns two errors on appeal. He challenges a jury instruction on his aiding and abetting the arson, arguing that it was not grounded in the indictment, that he was unfairly surprised by it, and that it was not supported by the evidence. He also challenges his sentence. Lincoln contends that because his two criminal acts were part of one scheme, his sentences should have been concurrent instead of consecutive. We affirm the appellant's convictions and sentence.

Early one morning in August of 1987, someone set fire to Lincoln's Market—a neighborhood grocery store. Joseph Lincoln is the Lincoln of Lincoln's Market. He was vacationing with his family in Mankato, Minnesota, when the fire occurred. Soon thereafter, Lincoln filed a claim by mail with his insurance company for the loss of his grocery store's contents. It does not appear from the record that his claim was ever paid. It was clear from the

---

* The Honorable Paul Benson, Senior United States District Judge for the District of North Dakota.

1. The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota.

beginning that this was a case of arson. Gasoline had been spread around the building, and the fumes were ignited by the pilot light of the hot-water heater. The Market's contents were destroyed and the building damaged. Suspicion centered on Lincoln. He was indicted, pleaded not guilty, and a jury trial followed. Lincoln was convicted of both arson and mail fraud, and has now taken this appeal.

Lincoln first urges that the District Court erred in submitting an aiding-and-abetting instruction to his jury. The indictment charges Lincoln with actually burning down the grocery store himself. The appellant says all the government's proof and its theory of the case supported that explanation. At the last moment, however, and to his disadvantage, the government supposedly hedged its bet by convincing the District Court to instruct the jury on an alternative theory of guilt: Lincoln could be convicted if he participated in the arson in any way. The appellant seeks a new trial on this basis.

■ The government rightly notes, and Lincoln eventually concedes, that the law does not require amending an indictment to instruct a jury (or indeed convict a defendant) on the lesser offense of aiding and abetting the principal crime charged. See, e.g., *United States v. Frye*, 548 F.2d 765, 767 n. 4 (8th Cir.1977) (citing cases). The appellant's allegations of a constructively amended indictment, then, boil down to two different allegations of error: he found out about the aiding-and-abetting instruction so late in the day that his defense was harmed, and the evidence simply did not support the instruction.

■ We are unconvinced that the appellant deserves a new trial on this basis. The record demonstrates Lincoln had clear notice of the instruction before his trial began, and that ample evidence presented during the trial justified the instruction. A week before trial Lincoln received the government's proposed jury instructions—including an aiding-and-abetting instruction. In his opening statement the United States Attorney contended that Lincoln "actively participated in" and "orchestrat-

ed" the arson; he did not claim that the evidence would prove Lincoln started the fire. T. I–81, 84. The ultimate decision regarding what role, if any, Lincoln actually played in the arson was left in the jury's hands. Moreover, the evidence supported alternative interpretations of that role. At least one government witness placed Lincoln at the crime scene. Other witnesses (including some defense witnesses) testified they saw several individuals—none of whom was Lincoln—around the Market before the fire erupted. Most importantly, gasoline cans found at the burned-out store were traced to a K–Mart store in Mankato, Minnesota. A man resembling Lincoln purchased similar cans there the day before the fire. In sum, the evidence supported a reasonable conclusion that Lincoln at least helped in the arson. This evidentiary foundation, and the fact that the defense had no good legal reason to be surprised by this theory of Lincoln's guilt, makes the aiding-and-abetting instruction proper.

■ Lincoln next argues that the District Court abused its discretion at sentencing. He does not challenge either his ten-year sentence for arson or his twenty-one month sentence for mail fraud. Rather, Lincoln presses us to conclude that his two sentences should be served concurrently instead of consecutively. The appellant's claim is complicated by the timing of his crimes. He burned down his store before the effective date of the federal Sentencing Guidelines, but he mailed his fraudulent insurance claim after the Guidelines took effect. If both of Lincoln's crimes had been pre-Guidelines offenses, as he concedes, he would not have much of an argument here; the choice between consecutive and concurrent sentences, like almost all aspects of the sentence, was within the sentencing court's discretion. *United States v. Tucker*, 404 U.S. 443, 446–47, 92 S.Ct. 589, 591–92, 30 L.Ed.2d 592 (1972). If both Lincoln's crimes were Guidelines offenses, he might have a stronger claim; the Guidelines carefully channel all sentencing discretion, including whether to impose concurrent or consecutive sentences for related crimes. U.S.S.G. § 3D1.2. Lin-

coln's case has one foot in each of these sentencing worlds, and we must decide what difference that makes.

We conclude that the posture of this case does not determine Lincoln's sentence. We are guided to our decision by the well-reasoned opinions of two of our sister circuit courts which have already faced this straddle situation. See *United States v. Watford*, 894 F.2d 665 (4th Cir.1990) (Wilkins, J.); *United States v. Garcia*, 903 F.2d 1022 (5th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 364, 112 L.Ed.2d 327 (1990). The upshot of these cases is that while district courts may be guided in their decision by the Sentencing Guidelines, it is not an abuse of discretion to impose consecutive sentences when a defendant stands convicted of related pre-Guidelines and Guidelines offenses—even if the Guidelines would mandate concurrent sentences if both offenses were subject to them.

Both *Watford* and *Garcia* affirmed consecutive sentences that would have been concurrent under the Guidelines. We adopt their reasoning insofar as it applies to this case. Whether to impose concurrent or consecutive sentences was within Judge Murphy's informed discretion. At sentencing she stated she had considered all the evidence at trial, the pre-sentence report, the nature of Lincoln's crimes, and his potential victims. That she did not consider or follow the Guidelines in deciding to impose consecutive sentences on Lincoln does not impair her deliberations. We affirm her decision.

The result in this case would probably not change even if both of Lincoln's crimes were within reach of the Sentencing Guidelines. We are not persuaded that his crimes are so closely related as to deserve concurrent sentences. They are surely parts of the same scheme. But the appellant's arson and mail fraud had different potential victims: the people who lived above the grocery store and the insurance company. The different harms Lincoln could have inflicted probably justify consecutive sentences even under the current regime. See U.S.S.G. § 3D1.2.

The appellant's convictions and sentence are

Affirmed.