PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

v.

JERMAINE LAVONNE CHASE,
    *Defendant-Appellant.*

No. 00-4803

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Jackson L. Kiser, Senior District Judge.
(CR-94-106)

Argued: May 9, 2002

Decided: July 10, 2002

Before WILKINS, MICHAEL, and MOTZ, Circuit Judges.

Affirmed by published opinion. Judge Wilkins wrote the opinion, in
which Judge Michael and Judge Motz joined.

## COUNSEL

**ARGUED:** Terry N. Grimes, TERRY N. GRIMES, ESQ., P.C., Roa-
noke, Virginia, for Appellant. Ray B. Fitzgerald, Jr., Assistant United
States Attorney, Charlottesville, Virginia, for Appellee. **ON BRIEF:**
John L. Brownlee, United States Attorney, Charlottesville, Virginia,
for Appellee.

**OPINION**

WILKINS, Circuit Judge:

Jermaine Lavonne Chase appeals his sentence, contending that it is unlawful under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Although we conclude that his sentence for conspiracy exceeds the applicable statutory maximum, we nevertheless affirm on the basis that this error was harmless.

I.

This case is now before us for the third time. In 1994, Chase was convicted of conspiracy to possess with the intent to distribute cocaine and cocaine base, *see* 21 U.S.C.A. § 846 (West 1999); possession of a firearm by a convicted felon, *see* 18 U.S.C.A. § 922(g) (West 2000); possession of cocaine base with the intent to distribute, *see* 21 U.S.C.A. § 841 (West 1999 & Supp. 2002); possession of cocaine with the intent to distribute, *see id.*; and two counts of using a firearm in connection with a drug trafficking offense, *see* 18 U.S.C.A. § 924(c) (West 2000). The district court sentenced Chase to a total of 592 months imprisonment.

On appeal, we determined that Chase's two convictions for use of a firearm in connection with a drug trafficking offense were invalid under *Bailey v. United States*, 516 U.S. 137 (1995). *See United States v. Chase*, 127 F.3d 1100, 1997 WL 657132, at *3-*4 (4th Cir. 1997) (per curiam) (unpublished table decision) (*Chase I*). As a result of this decision, the case was remanded to the district court and Chase was resentenced to a total of 360 months. This sentence consisted of four concurrent terms: 360 months for conspiracy, 120 months for the § 922(g) offense, and 240 months for each of the substantive drug trafficking offenses.

Chase appealed again, and we again granted relief. Our decision was prompted by uncertainty about whether the district court recognized its authority under appropriate circumstances to grant a downward departure based on post-offense rehabilitation. We remanded to allow the court to consider this issue. *See United States v. Chase*, 202

F.3d 260, 1999 WL 1054140, at *2 (4th Cir. 1999) (per curiam) (unpublished table decision) (*Chase II*).

On remand, the district court conducted a third sentencing hearing. At this hearing, Chase contended that his 360-month sentence for conspiracy was unlawful under *Apprendi* (which was decided after *Chase II*). The district court ruled that it could not consider this claim or others raised by Chase because it was restricted by our mandate to consideration of the rehabilitation issue. The court then rejected Chase's request for a downward departure and reinstated the prior sentence of 360 months.

## II.

On appeal, Chase reiterates his *Apprendi*-based challenges to his sentence. As noted above, the district court declined to consider these challenges because they were not encompassed within our mandate in *Chase II*. *See United States v. Bell*, 5 F.3d 64, 66-67 (4th Cir. 1993) (discussing the mandate rule and its exceptions). We need not decide whether this was correct, because, even if the court erred in applying the mandate rule (and we do not suggest that it did), this error was harmless.[1]

Under *Apprendi* and *United States v. Promise*, 255 F.3d 150 (4th Cir. 2001) (en banc), *cert. denied*, 70 U.S.L.W. 3724 (U.S. May 28, 2002) (No. 01-6398), the maximum sentence available for Chase's conspiracy conviction was 240 months. *See Promise*, 255 F.3d at 156-57. Consequently, the district court erred in imposing a 360-month term for that offense.[2] This error was harmless, however, if it did not result in a sentence greater than that which would otherwise have been imposed. *See United States v. Stokes*, 261 F.3d 496, 499 (4th Cir. 2001), *cert. denied*, 122 S. Ct. 1546 (2002). This would be the case if the district court would have been required to impose consecutive terms of imprisonment in order to achieve the 360-month sen-

---

[1]Chase has also raised an unrelated claim concerning the calculation of his criminal history category. We affirm the ruling of the district court that consideration of this issue is barred by the mandate rule.

[2]It should be noted that *Promise* was decided after Chase's most recent sentencing hearing.

tence that the court deemed to be an appropriate level of punishment under the sentencing guidelines. *See United States v. Angle*, 254 F.3d 514, 518-19 (4th Cir.) (en banc), *cert. denied*, 122 S. Ct. 309 (2001).

To determine whether consecutive terms were required here, we consider three issues that the parties briefed at our direction: (i) whether Chase's offenses were grouped pursuant to *U.S. Sentencing Guidelines Manual* §§ 3D1.1, 3D1.2 (1994),[3] (ii) whether such grouping was required by the guidelines, and (iii) whether it is permissible to "de-group" offenses in order to impose consecutive sentences pursuant to U.S.S.G. § 5G1.2.

It is apparently undisputed that Chase's offenses were grouped and that such grouping was required. We now hold that such grouping does not preclude the imposition of consecutive sentences under § 5G1.2. This conclusion is supported by the language and structure of the guidelines, by contemporary and traditional practice, and by the policies underlying the guidelines.

### A. *Language and Structure of the Guidelines*

The guidelines establish a process for selecting an appropriate sentence based on a defendant's criminal history and the relevant conduct associated with the offense of conviction and the ensuing investigation and prosecution. *See* U.S.S.G. § 1B1.1. The rules regarding grouping and consecutive sentences apply in different phases of this process.

The grouping rules apply to the calculation of an "offense level" based on relevant conduct.[4] These rules

---

[3]Unless otherwise indicated, all of our guideline citations are to the 1994 Guidelines Manual.

[4]In assigning an offense level, the district court begins with a base offense level and then considers adjustments based on factors specified in the guidelines (such as possession of a weapon or the defendant's role in the offense) and departures, some grounds for which are set forth in Chapter 5, Part K.

operate to accomplish two key objectives of the Sentencing Reform Act: (1) the avoidance of double punishment for what is in essence the same criminal conduct (*e.g.*, a conspiracy offense and a substantive offense that was the sole object of the conspiracy . . . ), and (2) an incremental increase in punishment for each offense of conviction that embodies significant additional criminal conduct.

*United States v. Watford*, 894 F.2d 665, 669 (4th Cir. 1990). The rules achieve these goals by consolidating related offenses into groups and assigning a combined offense level based on the components of each group, the number of groups, and the relative offense levels assigned to each group. *See* U.S.S.G. §§ 3D1.1-3D1.4.

The choice between concurrent and consecutive sentences arises later, when the court imposes a specific sentence. The court must select an appropriate term of imprisonment by consulting the sentencing table set forth in Chapter 5, Part A, which prescribes a guideline range based on the defendant's final offense level and criminal history category. The court must then refer to the "stacking" rule, § 5G1.2, if (i) the defendant has been convicted of multiple offenses and (ii) the "total punishment"—*i.e.*, the point within the guideline range designated by the district court as the appropriate term of imprisonment—exceeds the statutory maximum for the offense carrying the greatest penalty. In that event, the court must impose consecutive sentences "to produce a combined sentence equal to the total punishment." U.S.S.G. § 5G1.2(d). Otherwise, § 5G1.2 mandates concurrent sentences in the absence of statutory requirements to the contrary.

As this discussion illustrates, grouping and stacking are separate concepts relevant in different stages of the sentencing process. Moreover, they are not mutually exclusive; that is, as a purely logical matter, there is no obstacle to stacking a defendant's sentences for grouped offenses. Neither does any language in the grouping rules or § 5G1.2 prohibit consecutive sentences for grouped offenses. Indeed, we consider it significant that § 5G1.2 makes no distinction between grouped offenses and offenses in separate groups.

The only language that even suggests a prohibition against stacked sentences for grouped offenses appears in the introduction to the

grouping rules, which states that "counts that are grouped together are treated as constituting a single offense for purposes of the guidelines." U.S.S.G. ch. 3, pt. D, intro. comment. It is clear from the context, however, that this language does not control the choice between concurrent and consecutive sentences. The grouping rules apply only to offense-level computations, not to the other components of the sentencing process. This is shown with particular clarity in the illustrations following U.S.S.G. § 3D1.5, which discuss the proper application of the grouping rules without any reference to total punishment. Moreover, the "single offense" contemplated in the commentary is not any individual count of conviction, but rather a hypothetical aggregate offense embracing all relevant conduct. In this respect, the treatment of grouped *convictions* as a single offense corresponds to the statutory treatment of multiple *sentences* as "a single, aggregate term of imprisonment." 18 U.S.C.A. § 3584(c) (West 2000). Thus, we do not construe the "single offense" language of this commentary to preclude stacking of grouped offenses.

Our understanding of the relevant guidelines is reinforced by material added to the Guidelines Manual after Chase's first sentencing hearing. Specifically, the commentary following U.S.S.G. § 2P1.2 expressly provides for consecutive sentences for grouped offenses. *See U.S. Sentencing Guidelines Manual* § 2P1.2, comment. (n.2) (2001). While this does not conclusively resolve the issue, it tends to confirm that grouping and stacking are not inherently incompatible.

### B. *Contemporary and Traditional Practice*

The practice of courts applying the guidelines is in accord with our determination that it is permissible to impose consecutive sentences for grouped offenses. Indeed, this court has already stated (arguably in dicta) that "section 5G1.2, in conjunction with section 3D1.2, requires that a sentence on a conspiracy count shall run concurrently with the sentence on substantive counts that were included within the conspiracy, *except to the extent necessary to produce a sentence within the appropriate sentencing guidelines range.*" *Watford*, 894 F.2d at 669 (emphasis added). In addition, numerous cases decided by this court and other courts of appeals implicitly countenance consecutive sentences for grouped offenses. *See, e.g.*, *United States v. Stewart*, 256 F.3d 231, 257 (4th Cir.) (holding that imposition of sentences

exceeding statutory maximum did not violate substantial rights because district court was obliged to stack sentences for grouped offenses to achieve same total punishment), *cert. denied*, 122 S. Ct. 633 (2001); *see also United States v. Feola*, 275 F.3d 216, 219 (2d Cir. 2001) (per curiam) (explaining sentencing procedure for multiple counts, including both grouping and stacking).

This approach is consistent with pre-guidelines practice. Before the guidelines were enacted, district courts enjoyed virtually "unbridled discretion" to choose between concurrent and consecutive sentences, even for closely related offenses. *Watford*, 894 F.2d at 667; *cf. Albernaz v. United States*, 450 U.S. 333 (1981) (upholding consecutive sentences for single conspiracy encompassing two objectives).

The main limitation on district court discretion in the pre-guidelines era was the doctrine of merger, which applied (and still applies) to bar separate sentences in certain circumstances. *See, e.g., United States v. Jones*, 204 F.3d 541, 544 (4th Cir. 2000) (holding that district court erred in imposing separate sentences for greater offense and lesser included offense). Merger is primarily a function of legislative intent; thus, when a defendant has been convicted of multiple offenses, the sentencing court must determine whether Congress intended to authorize separate punishments for those offenses. *See Albernaz*, 450 U.S. at 336. If courts were required to impose concurrent sentences for all grouped offenses, then grouping would curtail the sentencing authority of district courts to the same extent as merger, regardless of any congressional purpose to authorize cumulative punishments. Here, for example, the *total* maximum penalty for Chase's conspiracy and substantive drug trafficking offenses would be 240 months—the same as the maximum applicable to each offense —despite the well-settled rule that substantive crimes committed in the execution of a conspiracy may be punished separately from the conspiracy itself, *see Pinkerton v. United States*, 328 U.S. 640, 643 (1946). This possibility of obstructing congressional purposes by requiring concurrent sentences for grouped offenses reinforces our conclusion that grouping does not preclude stacking.

## C. *Policies Underlying the Guidelines*

Finally, we consider whether a rule requiring concurrent sentences for grouped offenses would be consistent with the purposes underlying the guidelines. We believe it would not.

Congress enacted the Sentencing Reform Act, which led to the enactment of the guidelines, in part to create "a system that imposes appropriately different sentences for criminal conduct of differing severity." U.S.S.G. ch. 1, pt. A(3). In accord with this goal, the drafters of the guidelines adopted grouping rules "to provide incremental punishment for significant additional criminal conduct." U.S.S.G. ch. 3, pt. D, intro. comment. A rule prohibiting stacked sentences for grouped offenses would interfere with this effort by limiting the range of punishments available to the sentencing court.

Furthermore, this rule would have a predictable and entirely undesirable bias in favor of more culpable offenders. Under the guidelines, a defendant's sentencing range is increased if, *inter alia*, he played a leadership role in multi-defendant crimes, *see* U.S.S.G. § 3B1.1; he obstructed justice during the investigation of his offenses, *see* U.S.S.G. § 3C1.1; or he has an extensive criminal record, *see generally* U.S.S.G. ch. 4, pt. A. As the sentencing range increases in severity, it becomes more likely that the district court will need to resort to stacking in order to achieve an appropriate sentence within the guideline range. If stacking for grouped offenses were prohibited, then two defendants guilty of multiple crimes might receive roughly the same sentence even though one was subject to a higher guideline range as a result of more harmful conduct or a more egregious criminal history.

A rule that favors more culpable criminals over their less culpable confederates does not promote justice. While countervailing considerations might justify adoption of such a rule, we are not aware of any considerations that would warrant a prohibition against stacking sentences for grouped offenses. Moreover, as discussed earlier, there is no evidence that the guidelines contain such a prohibition. For all of these reasons, we hold that the district court could have sentenced Chase to consecutive terms totaling 360 months. In fact, § 5G1.2 would have required consecutive sentences if necessary to achieve the "total punishment." *See Angle*, 254 F.3d at 518 ("Had the district court been aware when it sentenced [the defendant] that the maximum penalty for his drug trafficking conviction was 20 years, § 5G1.2(d) would have obligated it to achieve the guideline sentence of 292 months imprisonment by imposing a term of 240 months or less on each count of conviction and ordering those terms to be served con-

secutively to achieve the total punishment mandated by the guidelines."). Accordingly, the imposition of a single 360-month term for conspiracy, although erroneous, was harmless.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*