UNITED STATES of America, Appellee,

v.

Angel MARQUEZ, Defendant–Appellant.

No. 680, Docket 90–1480.

United States Court of Appeals,
Second Circuit.

Argued Feb. 21, 1991.

Decided June 24, 1991.

---

Harriet B. Rosen, New York City, for defendant-appellant.

Susan E. Brune, Asst. U.S. Atty., S.D.N.Y., New York City (Otto G. Obermaier, U.S. Atty., S.D.N.Y. and Debra Ann Livingston, Asst. U.S. Atty., S.D.N.Y., New York City, of counsel), for appellee.

Before FEINBERG, MINER and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Defendant-appellant Angel Marquez appeals from a judgment entered in the United States District Court for the Southern District of New York, Kevin Thomas Duffy, *Judge*, following Marquez' plea of guilty. The indictment charged that Marquez possessed with the intent to distribute heroin on or about December 13, 1989 in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(C) (1988). Marquez was sentenced to a term of twelve months imprisonment, to be followed by a twenty-year term of supervised release. The district court also imposed a fine in the amount of $100,000, and the statutory special assessment of $50.

We vacate that portion of the judgment of conviction imposing a twenty-year term of supervised release, and remand for reconsideration in light of the Sentencing Guidelines. In all other respects, the judgment of conviction is affirmed.

## Background

The following information appears in the presentence investigation report ("PSR") prepared by the probation department regarding Marquez. In the fall of 1989, New York City Police Department ("N.Y.P.D.") detectives received information that Marquez was managing a heroin distribution ring for one George Rivera, who was incarcerated pending his trial for narcotics distribution. An N.Y.P.D. officer had stopped and questioned Marquez on numerous occasions; on one of those occasions, he discovered that Marquez was carrying approximately $20,000 in cash. On December 12, 1989, the same officer searched Marquez and discovered that Marquez was carrying a beeper, $1,000 in cash, and a copy of a page of the indictment naming Rivera. That page contained handwritten notations, which Marquez explained with the comment "we're doing voodoo on them." The PSR described some of the notations as follows:

Among the notations on the indictment, were "x's" next to every defendant in the case except for George Rivera. Below the names was a key, revealing that "x" meant "quiet their mouths." Moreover, one of the defendant's names was circled, and had three "x's" next to his name. "I want him quiet and I want him to pay for all he's done" was also written near his name. Underneath all the defendant's name [sic], another name was handwritten on the indictment, with five "x's" next to it. There was also "I want him more than anything" next to that persons [sic] name.

When Marquez was arrested on December 13, 1989, he had on his person 109 glassine envelopes of heroin, $1,570 in cash, and jewelry later appraised at $6,800. A search of Marquez' residence recovered a bag containing 1.2 grams of cocaine, $4,700 in cash, three handgun holsters, a police scanner, various documents that appeared to be records of narcotics transactions, and a strainer containing traces of cocaine residue.

While in jail, Marquez was provided with a financial statement form which he was to complete and mail to the probation department. On May 28, 1990, the probation department notified Marquez' wife and his counsel that the department had not yet received the statement. Mrs. Marquez then assisted the probation department in "obtaining some information," to wit, that "[t]he defendant's assets total $5,763 which include a bank account and the furnishings of their apartment." No liabilities were reported. At the sentencing proceeding on July 16, 1990, Marquez' counsel indicated to the court that Marquez had in fact filled out the initial financial statement, that the probation department had sent Marquez a duplicate form when it failed to receive the initial statement but had indicated some doubt whether the duplicate statement could be timely returned, and that in any event the probation department believed that adequate financial information had been obtained from Mrs. Marquez.

The probation department initially assigned Marquez a base offense level of 12,

calculated from the amount of narcotics found on his person and in his apartment. *See* U.S.S.G. § 2D1.1(a)(3). It then credited Marquez with a two-level reduction for acceptance of responsibility, bringing his offense level to 10. *See id.* § 3E1.1. Given his criminal history category of I, Marquez was assigned a guideline range of six to twelve months imprisonment. *See id.* § 4A1.1.

By letter dated July 5, 1990, the government urged the probation department to recalculate Marquez' offense level based upon a larger quantity of narcotics. The prosecution contended that this was warranted by confidential source information that Marquez was managing a selling "spot" for heroin, and by the various items seized from Marquez' apartment and person. The government stressed an organizational chart containing information regarding selling "spots" and personnel involved in the sale of two brands of heroin, and a card assertedly reflecting $29,000 in receipts from Marquez' heroin business. The government also argued that these documents established that Marquez was a "manager or supervisor" of a narcotics conspiracy involving "five or more participants," so that his offense level should be increased by three additional levels pursuant to U.S.S.G. § 3B1.1(b).

In a second PSR, the probation department incorporated the first change suggested by the government, recalculating Marquez' offense level based upon an inference that the alleged receipts of $29,000 reflected proceeds from the sale of $10 envelopes of heroin weighing a total of approximately 79.15 grams. The second PSR also increased Marquez' offense level by two because the probation department found that he had been a "supervisor" of narcotics activity. *Id.* § 3B1.1(c). Accordingly, the revised offense level in the second PSR was 24, resulting in a guideline range of 51 to 63 months imprisonment.

At the sentencing proceeding on July 16, 1990, the district court rejected as "speculation" the second PSR's adoption of the government's view that the alleged receipts reflected heroin attributable to Marquez,

but indicated its intention to increase Marquez' base offense level to 36 by taking into account the heroin charged in the indictment naming Rivera. Judge Duffy concluded that Marquez was "a member, basically of a conspiracy; ... there was a lot of dealing—heavy dealing; and part of the conspiracy was just as is reported: 'To quiet the mouths of those who would testify against Mr. Rivera.'" Addressing Marquez, the court said:

> Now, for some reason, the government failed to or refused to indict you for a conspiracy. I have absolutely no idea why they didn't. Nor do I have any idea why they missed the obvious conspiracy between you and George Rivera....
>
> Now, Mr. Rivera's work in connection with the distribution of heroin thus has to be considered as part and parcel of the overall offense to which you pleaded guilty.

The court then adjourned the sentencing hearing to allow the parties to respond to this announced intention. On July 18, 1990, the government wrote to the district court conceding that it had "no information that Marquez was a member of any conspiracy with Rivera prior to Rivera's arrest," and therefore that Marquez could not be held accountable for the heroin specified in the indictment naming Rivera.

At the resumed sentencing hearing on July 19, 1990, the district court reiterated that it would not accept the government's argument for a sentencing enhancement based upon the alleged $29,000 in receipts, and imposed a sentence of twelve months imprisonment, the maximum of the range recommended by the initial PSR. The court continued, again addressing Marquez:

> [I]f this were the old days and the guidelines were not here, I would sentence you to the maximum. However, the guidelines are here, and the government has boxed the court in beyond belief. So I'll give you what the guidelines provide.
>
> 12 months. It is a gift. It is given for some reason that I don't understand. And I have no knowledge as to why. However, there is no connection whatso-

ever as to guidelines for supervised release. You will be on supervised release for 20 years. Every 30 days you will be in for a drug test.

Normally I do not impose a fine. In this case, the fine is $100,000. A $50 assessment is required by law.

Marquez appeals the term of supervised release and the fine.

### Discussion

#### A. *Supervised Release.*

█ The government agrees with Marquez' contention that a remand for reconsideration of the term of supervised release is appropriate. So do we. Contrary to the district court's statement that there is no connection between the Guidelines and supervised release, U.S.S.G. Ch. 5, Pt. D is entitled "Supervised Release." Further, U.S.S.G. § 5D1.2(a) provides: "If a defendant is convicted under a statute that requires a term of supervised release, the term shall be at least three years but not more than five years, or the minimum period required by statute, whichever is greater." The minimum statutory term of supervised release applicable to Marquez is three years. 21 U.S.C. § 841(b)(1)(C) (1988). Therefore, the Guidelines call for a term of supervised release within the three-to-five-year range. We accordingly vacate the twenty-year term of supervised release and remand to the district court for the imposition of a term of supervised release in light of the Guidelines.

█ Marquez does not contend that courts may never depart from the Guidelines range for terms of supervised release. Any such contention would run counter to 18 U.S.C. § 3553(b) (1988), which authorizes a court to depart from the Guidelines when "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." *See also* U.S.S.G. § 5K2.0. Marquez argues, however, that upward departures from the Guidelines are not permitted as to supervised release in cases in which there is no departure from the Guidelines as to the term of imprisonment.

On the contrary, we perceive that there may be circumstances not adequately taken into account by the Guidelines as to the term of supervised release but adequately taken into account as to the term of imprisonment.[1] Of course, it would be incumbent upon the sentencing court in such a case to identify those circumstances and explain why they justify a departure in the term of supervised release but not in the term of imprisonment. *See* 18 U.S.C. § 3553(c)(2) (1988).[2] Furthermore, any departure should be considered incrementally, analogously to the sequential method specified in *United States v. Kim*, 896 F.2d 678, 685 (2d Cir.1990), although there is no guide for departures as to terms of supervised release comparable to the precise measures provided by the sentencing table for departures as to terms of imprisonment. Finally, the sentencing court should give the

1. Cf. *United States v. Richison*, 901 F.2d 778 (9th Cir.1990) (per curiam):
    > [T]he Guidelines contemplate that the terms and conditions, as well as the period of, supervised release should be adjusted to reflect a defendant's drug and alcohol abuse. U.S.S.G. § 5H1.4, p.s. Thus, while dependency may influence supervised release in the ordinary case, it should affect time in custody only in the exceptional case. Before considering departure on account of dependency, therefore, a sentencing judge should find that the particular defendant's condition is so out of the ordinary that departure, rather than any other measure, is required, and state the reasons why a greater period of incarceration is more appropriate than a longer term of supervised release.

*Id.* at 781.

2. Section 3553(c) provides in pertinent part:
    > The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence—
    > (1) is of the kind, and within the range, described in subsection (a)(4) [i.e., the Guidelines range] and that range exceeds 24 months, the reason for imposing a sentence at a particular point within the range; or
    > (2) is not of the kind, or is outside the range, described in subsection (a)(4), the specific reason for the imposition of a sentence different from that described.

defendant notice, prior to sentencing, of its intention to depart, "inform the defendant of the factors that the judge is planning to rely upon and offer some brief explanation as to why these factors warrant a departure." *Id.* at 681; *see Burns v. United States,* — U.S. —, —, 111 S.Ct. 2182, 2184–85, 115 L.Ed.2d 123 (1991); *cf. United States v. Contractor,* 926 F.2d 128, 131–32 (2d Cir.1991) (source other than sentencing judge may provide defendant with adequate notice of possibility of upward departure).

### B. *Fine.*

Marquez challenges the $100,000 fine on the grounds that the district court failed: (1) to explain its reasons for imposing the fine, and (2) to consider Marquez' ability to pay it.

■ We turn first to the asserted failure to explain the basis for the fine. The requirement for any explanation is set forth in 18 U.S.C. § 3553(c), the pertinent provisions of which are set forth *supra* at note 2. Subsection 3553(c)(2) is inapplicable because the $100,000 fine was within the Guidelines range. Marquez could have been fined up to $1,000,000. *See* 21 U.S.C. § 841(b)(1)(C); 18 U.S.C. § 3571(b)(1) (1988); U.S.S.G. § 5E1.2(c)(4).[3]

Subsection 3553(c)(1), upon which Marquez primarily relies, requires a specification of "the reason for imposing a sentence at a particular point within the [Guidelines] range" only if that range "exceeds 24 months." *See United States v. Pippin,* 903 F.2d 1478, 1484–85 (11th Cir.1990). Here the applicable range is expressed in terms of dollars rather than months. We reject Marquez' suggestion that we attempt to convert dollars into months in order to render subsection 3553(c)(1) applicable to the fine imposed in this case. Aside from being unworkable, such a procedure has no basis in any statute or the Guidelines. Since the requirement of subsection 3553(c)(1) is triggered only by the length of a sentence and not by the amount of a fine, the district court was under no special obligation to justify the magnitude of the fine.

■ Marquez' second ground for challenging the $100,000 fine is that in imposing it, the district court failed to heed the statutory command that it "consider … the defendant's income, earning capacity, and financial resources." 18 U.S.C. § 3572(a)(1) (1988). This provision requires the court only to "consider" these factors, and imposes no separate requirement that this consideration be articulated. Of course, some specification of the basis for a fine would be helpful, especially when, as in this case the sentencing court explicitly acknowledges a departure from its normal practice. The only applicable statutory requirement, however, is the general mandate of section 3553(c) that the sentencing court "state in open court the reasons for its imposition of the particular sentence." We decline to require any additional explanation for the fine imposed by the district court.

■ Implementing section 3572(a)(1), U.S.S.G. § 5E1.2(d)(2) directs a sentencing court, in determining the amount of a fine, to consider *"any evidence presented as to the defendant's ability to pay the fine"* (emphasis added). The emphasized language was added by a clarifying amendment effective November 1, 1990 that also amended section 5E1.2(a), which states a general requirement that a sentencing court "shall impose a fine in all cases," by adding the following language: "except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." *See* U.S.S.G. App. C, ¶ 356. It would thus appear that the Guidelines as presently clarified require a defendant seeking to avoid a fine on grounds of financial inability to come for-

---

**3.** The government contends that this suffices to foreclose appealability because *United States v. Soliman,* 889 F.2d 441, 443 (2d Cir.1989), precludes appeal of a sentence within the Guidelines range. As the government concedes, however, in *Soliman* there was "no allegation that an appealable violation of law or a misapplication of the Guidelines ha[d] occurred." *Id.* Here, on the contrary, Marquez claims specific statutory violations, thus presenting appealable issues.

ward with evidence of that inability, which is more likely to be available to a defendant in any event. Cases construing the prior version of section 5E1.2 had split on this issue. *Compare, e.g., United States v. Rafferty,* 911 F.2d 227, 232 (9th Cir.1990) ("The guidelines require the court to impose a fine unless the defendant establishes an inability to pay."), *and United States v. Perez,* 871 F.2d 45, 48 (6th Cir.) (same), *cert. denied,* 492 U.S. 910, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989), *with United States v. Walker,* 900 F.2d 1201, 1206 (8th Cir. 1990) (per curiam) ("When imposing any fine, the district court must consider the defendant's ability to pay, in light of his earning capacity, and the burden the fine places on the defendant.").

Since the clarifying amendments to section 5E1.2 became effective on November 1, 1990, after Marquez was sentenced in this case, and since we must in any event remand on the issue of supervised release, the district court may in its discretion allow Marquez to present evidence on remand regarding his ability to pay the $100,000 fine. *See* Fed.R.Crim.P. 35(a)(2). Although Marquez contends on appeal that he had an inadequate opportunity to present such evidence at his initial sentencing, he does not point to any specific showing that would materially vary the information submitted on his behalf to the probation department by his wife. We note also that the district court was surely not required to accept uncritically a representation that Marquez had total assets of $5,763 when he had been found on three separate occasions to be carrying $20,000, $1,000, and $1,570, respectively, in cash; was wearing jewelry valued at $6,800 when he was arrested; and had $4,700 in cash in his apartment at the time of his arrest. *See United States v. Rowland,* 906 F.2d 621, 624 (11th Cir.1990) ("Evidence that a defendant has failed to disclose the existence of assets to the court, may support a determination that the defendant is able to pay a fine with those undisclosed assets."); U.S.S.G. § 5E1.2, comment. (n. 6).

Conclusion

We vacate that portion of the judgment of conviction imposing a twenty-year term of supervised release, and remand to the district court for reconsideration in light of the Sentencing Guidelines. In all other respects, the judgment of conviction is affirmed.