UNITED STATES of America,
Appellee,

v.

Vadim PAVLOTSKIY also known as
"Vadik," Defendant–Appellant.

Docket No. 01–1369.

United States Court of Appeals,
Second Circuit.

Sept. 17, 2002.

Catherine L. Youssef, Assistant United States Attorney (Alan Vinegard, United States Attorney and Jo Ann M. Navickas, Assistant United States Attorney, of counsel), United States Attorney's Office for the Eastern District of New York, Brooklyn, NY, for Appellee.

James E. Neuman (Richard E. Mischel, on the brief), Mischel, Neuman & Horn, P.C., New York, NY, for Appellant.

Present McLAUGHLIN and CABRANES, Circuit Judges, and LYNCH, District Judge.[*]

## SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of said District Court be and hereby is AFFIRMED in part, VACATED and REMANDED in part.

Defendant Vadim Pavlotskiy timely appeals from a June 29, 2001 judgment of the District Court convicting the defendant of conspiracy to distribute and possess with intent to distribute anabolic steroids, in violation of 21 U.S.C. §§ 841(b)(1)(D) and 846, possessing a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A), and conspiring to entice individuals to travel in interstate commerce to engage in prostitution, in violation of 18 U.S.C. §§ 371 and 2422(a).

All of the above convictions resulted from guilty pleas by the defendant, except for the Section 924(c) conviction which resulted from a jury trial. On appeal, the defendant challenges only his Section 924(c) conviction and raises two arguments: (1) there was insufficient evidence for a jury to have found him guilty of possessing a firearm in relation to a drug trafficking offense; and (2) the District Court erred in its sentence by applying an incorrect grouping analysis.

### BACKGROUND

At trial, the Government introduced testimony from several witnesses establishing that the defendant was under surveillance from October 1997 through December 1998 by a joint Drug Enforcement Agency ("DEA") and New York City Police Department task force. On October 28, 1997, task force members observed the defendant drive to an address that they had learned would be the location for the illegal delivery of an order of anabolic steroids. At that address, the defendant met with Daniel Pressa. The defendant met Pressa again a few days later, on October 30, in the defendant's car. While Pressa was empty-handed upon entering the defendant's car during this meeting, Pressa carried a small package when he left.

On March 18, 1998, authorities intercepted from the United States mail an envelope addressed to Pressa's wife at Pressa's home. Pursuant to a search warrant, law enforcement discovered an order for anabolic steroids and several thousand dollars in cash in the envelope. They then resealed the envelope and returned it to the mail.

The next day, the task force members stationed themselves outside the defendant's home. While they were surveilling the defendant's apartment, authorities observed the defendant leave his building carrying a bag. The defendant then entered a garage and emerged in the same car that authorities had seen the defendant drive on October 28 and 30, 1997.

Next, the defendant drove toward Pressa's residence. On the way to Pressa, the defendant stopped at the home of Alexandr Belov. Sitting in his car, the defendant gave Belov money in exchange for a clear bag containing boxes. Soon thereafter, and only a few blocks away from Pressa's home, authorities stopped the defendant. On the passenger seat next to the defendant, authorities discovered the

[*] Of the United States District Court for the Southern District of New York, sitting by des- ignation.

translucent bag which contained anabolic steroids. When they opened the trunk, agents found the bag which they had observed the defendant carry out of his house 10 to 15 minutes earlier. That bag also contained anabolic steroids. Directly below the bag, in the tire well, was a so-called fanny pack in plain view. The fanny pack contained a loaded gun. Other than the bag and the fanny pack, the trunk was almost entirely empty.

During the defendant's plea allocution with respect to the charges of conspiring to distribute and possess with intent to distribute anabolic steroids, in violation of 21 U.S.C. §§ 841(b)(1)(D) and 846, he admitted that he distributed anabolic steroids. He also admitted that on March 19, 1998, he was participating in the drug conspiracy to which he pleaded guilty and that after he bought steroids at Belov's house, he drove toward Pressa's house to sell them there.

At the trial on the Section 924(c) gun charge, the defendant testified regarding how the gun must have gotten into his trunk. He testified that one of his coworkers at the club where he was a security guard seized the fanny pack on March 18, 1998, from someone trying to enter the club. The defendant testified that his coworker had gone to the club's office with the fanny pack but did not have the pack when he returned. Pavlotskiy also claimed that because he was tired, he had his coworker retrieve his car for him before he went home that night. The defendant admitted that he had placed the anabolic steroids in a bag in the trunk of his car but denied knowing that the fanny pack containing the gun was there.

In rebuttal, a DEA agent testified that the defendant made a post-arrest statement in which he stated that he had confiscated the gun in question several weeks or months before March 19, 1998, that he had decided to keep the gun for his protection, and that the gun belonged to him.

After the jury returned a guilty verdict on the Section 924(c) charge, the defendant was sentenced on June 29, 2001 on all the counts of conviction (pursuant to guilty pleas on the conspiracy to possess and distribute steroid charges and prostitution charges and pursuant to a jury verdict on the gun possession charges). The Court set the defendant's base offense level at 16 based on 19,000 units of steroids. The Court then enhanced the offense level two levels for the defendant's leadership role. Next, because the defendant had been convicted on multiple counts, the Court applied a multi-count adjustment pursuant to Section 3D1.4 of the United States Sentencing Guidelines ("U.S.S.G."), increasing the defendant's offense level by six-levels. Finally, the Court made a three-level downward adjustment for acceptance of responsibility, yielding an offense level of 21. The Court then sentenced the defendant principally to three concurrent 46 month terms of imprisonment on the drug and prostitution crimes and a five year consecutive sentence for the firearm crime.

This timely appeal followed.

### DISCUSSION

I. Sufficiency of Evidence

In assessing a challenge based on the sufficiency of the evidence, a court "must credit every inference that could have been drawn in the government's favor." *United States v. Villegas*, 899 F.2d 1324, 1339 (2d Cir.1990). We must affirm the judgment of conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original).

Section 924(c)(1)(A)(i) provides in relevant part that

> any person who, during and in relation to any ... *drug trafficking crime* ... *for* which the person may be prosecuted in a court of the United States, uses or carries a firearm or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such ... drug trafficking crime—(i) be sentenced to a term of imprisonment of not less than 5 years.

Under Section 924(c) the term "carries" includes carrying a gun "in [a] car's trunk or locked glove compartment" so long as one "knowingly possesses and conveys [it] in a vehicle." *Muscarello v. United States*, 524 U.S. 125, 126–27, 137, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998); *see also United States v. Persico*, 164 F.3d 796, 802 (2d Cir.1999) ("In this Circuit, the 'carry' prong is satisfied if the evidence establishes that, during and in relation to the underlying crime, the defendant ... (2) moved the firearm from one place to another."). The phrase "in relation to" requires that the "firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence.... Instead, the gun at least must 'facilitate or have the potential of facilitating,' the drug trafficking offense." *Smith v. United States*, 508 U.S. 223, 227, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993).

■ The Government introduced more than sufficient evidence to support the defendant's conviction under 18 U.S.C. § 924(c), establishing that the defendant carried a gun "during and in relation to ... a[ ] drug trafficking crime." In particular, DEA agents testified that the fanny pack containing the gun was located underneath a bag of drugs which agents had observed the defendant carry into the car only minutes before he was pulled over. This observation, coupled with the fact that the trunk was nearly empty, severely undercuts the defendant's argument that he was unaware that the gun was in his trunk during the drug deal.

Furthermore, the jury was entitled to conclude that the defendant carried the gun "in relation to" the drug offense based on an inference that the defendant could use the gun to protect himself during drug deals. A DEA agent testified that the defendant stated, after being arrested, that he had acquired the gun weeks or months prior to his arrest and used it for protection. In addition, when authorities found the gun in the defendant's trunk, he had just finished one drug transaction while sitting in his car and was driving to undertake another. Indeed, agents had seen the defendant participate in another apparent drug sale with Pressa in the same vehicle in late October 1997. These facts strongly support the inference that the defendant carried the gun for protection during his drug transactions.

Accordingly, there was sufficient evidence for the jury to find that the defendant was guilty of violating 18 U.S.C. § 924(c).

## II.  Sentencing

■ The defendant also argues that the District Court erred in sentencing him. Specifically, he argues that the Court erred by applying a six-level increase to his offense level pursuant to U.S.S.G. § 3D1.4 when only a five-level increase was warranted. The Government agrees.

Under U.S.S.G. § 3D1.4, when a defendant is sentenced based on multiple counts of conviction, a court is to determine "a combined offense level ... by taking the offense level applicable to the Group [of closely related counts] with the highest offense level and increasing that offense level by the amount indicated in the ...

table [set forth as part of U.S.S.G. 3D1.4." According to the table, a combined offense level can only be increased by a maximum of five levels for any multi-count adjustment.

While the Court did not indicate an intention to depart upwardly, it sentenced the defendant to 46 months of imprisonment on the drug and prostitution convictions, based in part on an offense level of 21. This offense level was in turn based in part on a six-level upward adjustment pursuant to § 3D1.4. But pursuant to the table in § 3D1.4, the Court could only increase the defendant's offense level by a maximum of five levels. Had the Court imposed a five-level increase in the offense level, the defendant's sentencing range would have been 33 to 41 months. Accordingly, the 46 month sentence imposed fell outside the applicable sentencing range prescribed by the Guidelines.

A District Court may depart from the Sentencing Guidelines if it determines "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). But before departing from the Guidelines, a district court must "state in open court ... the specific reason for the imposition of a sentence different from that described." 18 U.S.C. § 3553(c)(2); *see United States v. Marquez,* 941 F.2d 60, 64–65 (2d Cir.1991).

Although the defense did not object to the six-level increase in the offense level, plain error review is appropriate. *See United States v. Keppler,* 2 F.3d 21, 23–24 (2d Cir.1993); FED. R. CRIM P. 52. We conclude that, in the instant circumstances, increasing the offense level pursuant to U.S.S.G. § 3D1.4 by six levels, and sentencing the defendant outside the applicable Guidelines sentencing range, without indicating an intent to depart upwardly, constituted plain error. Accordingly we vacate the sentence and remand for resentencing.

CONCLUSION

For the reasons stated above, we AFFIRM the judgment of conviction but VACATE the sentence and REMAND the cause to the District Court for further proceedings consistent with this order.