STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE:
This Opinion and Order addresses the restitution to be paid by Defendant Joel H. Mingo Lamar ("Mingo Lamar") to the victims of his crime, namely, Bank of America ("BOA") and J.P. Morgan Chase ("Chase"), and the fine to be imposed on Mingo Lamar. For the reasons set forth herein, the Court finds that restitution in the amount of $709 should be paid by Mingo Lamar to BOA and $290 should be paid to Chase, pursuant to the terms of an Amended Judgment that will be entered in this case, but no fine should be imposed due to Mingo Lamar's financial condition.
BACKGROUND
On October 10, 2017, Mingo Lamar was charged by Complaint (ECF No. 1). On February 9, 2018, the Government filed a Misdemeanor Information charging him with one count of bank larceny in violation of 18 U.S.C. § 2113(b). (Misdemeanor Information, ECF No. 11, ¶ 1.) The information alleges that Mingo Lamar "did knowingly take and carry away, with intent to steal or purloin, property and money not exceeding $1,000 in value belonging to, and in the care, custody, control, management and possession of, a bank ...." (Misdemeanor Information, ¶ 1.)
*378 On February 22, 2018, Mingo Lamar pleaded guilty to the single count contained in the Misdemeanor Information. (2/22/18 Tr., ECF No. 24, at 16.) In his allocution at the time of the plea, Mingo Lamar stated that he had deposited checks into his bank account with knowledge that the checks did not belong to him and with the intention of keeping "some of" the proceeds from the checks. (See id. at 14-16.) In his plea agreement, Mingo Lamar agreed to pay restitution in an amount ordered by the Court. (Id. at 7.)
In its submission made prior to sentencing, the Government requested that restitution be paid to the following victims: (1) BOA, in the amount of $13,365.27; (2) Chase, in the amount of $12,636.65; and (3) TD Bank, in the amount of $77,360. (2/22/18 Gov't Ltr. to Court, ECF No. 15, at 2.) In his sentencing submission, Mingo Lamar argued for various alternatives: that no restitution be imposed (2/22/18 Def. Ltr. to Court, ECF No. 16, at 3); that the amount of restitution be set in the amount of $1,000 (id. ); that the restitution be capped at $9,500 (id. at 4); or that the Court "allow additional briefing on the restitution issue" following sentencing. (Id. )
Mingo Lamar was sentenced by the Court on February 23, 2018 to time served with a period of two years of supervised release. (Judgment, ECF No. 19, at 2-3.) However, the Court reserved decision on the amount of restitution and any fine. (Id. at 5.) The Court ordered the parties to make additional submissions related to the restitution and fine issues. (2/23/18 Order, ECF No. 18, ¶¶ 1-3.)
On March 9, 2018, the Government submitted an affidavit from a postal inspector reflecting that Mingo Lamar caused losses to BOA in the amount of $13,365.27 and Chase in the amount of $5,554.21. (3/9/18 Ltr., ECF No. 21, at 3-4.) The Government indicated that TD Bank "declined to respond to the Government's request for additional restitution information." (Id. at 1.)
Also on March 9, 2018, Mingo Lamar submitted a declaration, through counsel, stating that Mingo Lamar "is indigent and is unable to pay a fine or restitution." (Marcus Amelkin Decl., ECF. No. 20, ¶ 9.) On March 15, 2018, Mingo Lamar made an additional submission arguing that the Court should not impose a fine due to the fact that he is indigent, and that restitution should be imposed in the amount of $999. (3/15/18 Def. Ltr., ECF No. 23, at 2-4.) Mingo Lamar argued that restitution could only be imposed "for losses 'directly caused by the conduct composing the offense of conviction.' " (Id. at 2 (citation omitted).) According to Mingo Lamar, since the offense of conviction was based upon stealing an amount not exceeding $1,000, restitution should not exceed $1,000. (Id. at 2-3.)
On March 28, 2018 (and as required by a March 22, 2018 Order of the Court), the Government responded to Mingo Lamar's March 15, 2018 submission. (3/28/18 Gov't Ltr., ECF No. 27.) The Government acknowledged that restitution is limited by statute to the harm caused by the "offense of conviction," but argued that "restitution is not limited to the harm caused by the elements of the crime of conviction." (Id. at 1-2.) The Government also argued that the scope of restitution was determined by the time period set forth in the Information, which in this case was over a span of months. As such, the Government contends that "restitution is not limited to $999." (Id. at 1.)
DISCUSSION
I. Applicable Legal Standards
A. Restitution
The Mandatory Victims Restitution Act ("MVRA") requires the Court to order a defendant convicted of certain offenses to *379 "make restitution to the victim of the offense ...." 18 U.S.C. § 3663A(a)(1). Offenses against property defined in Title 18 are included in those offenses for which restitution is mandated in circumstances where "an identifiable victim or victims has suffered a ... pecuniary loss." 18 U.S.C. § 3663A(c)(1)(B). The Court imposes restitution in "the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A) ; see also United States v. Harris , 302 F.3d 72, 75 (2d Cir. 2012) ("The defendant's crime was against property in which identifiable victims suffered pecuniary loss, and thus the district court was required to order restitution and determine the amount thereof without consideration of the economic circumstances of the defendant.") (citations omitted).
The amount of restitution to be imposed, however, is subject to certain limitations. The Supreme Court has articulated that "restitution [is] to be tied to the loss caused by the offense of conviction." Hughey v. United States , 495 U.S. 411, 418, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990).[1] An "offense of conviction" is defined in the U.S. Sentencing Commission Guidelines Manual ("Sentencing Guidelines") as "the offense conduct charged in the count of the indictment or information of which the defendant was convicted." U.S.S.G. § 1B1.2(a). Further, the classification of an offense of conviction as a felony, rather than a misdemeanor, can be consequential. See , e.g. , United States v. Mejia , No. 16-CR-45 (RWS), 2017 WL 1536012, at *3 (S.D.N.Y. Apr. 28, 2017) ("The defendant is not eligible for probation because the offense of conviction is a Class A felony.").
B. Fine
Under the Sentencing Guidelines, "[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a). In determining the amount of the fine, the sentencing court is directed to consider "any evidence presented as to the defendant's ability to pay the fine (including the ability to pay over a period of time) in light of his earning capacity and financial resources." Id. § 5E1.2(d)(2). Waiver of the normally required fine is governed by U.S.S.G. § 5E1.2(e), which provides in part:
If the defendant establishes that (1) he is not able and, even with the use of a reasonable installment schedule, is not likely to become able to pay all or part of the fine required by the preceding provisions, or (2) imposition of a fine would unduly burden the defendant's dependents, the court may impose a lesser fine or waive the fine.
A defendant seeking to avoid a fine on the basis of inability to pay must come forward with evidence of that financial inability. United States v. Marquez , 941 F.2d 60, 65-66 (2d Cir. 1991). It is "ordinarily an abuse of discretion to impose a fine that exceeds a defendant's ability to pay" as established by evidence in the record. United States v. Salameh , 261 F.3d 271, 276 (2d Cir. 2001).
II. Application
A. Mingo Lamar Shall Make Restitution In The Amount Of $999
In determining the proper amount of restitution, the Court first looks to the *380 offense of conviction. Here, Mingo Lamar was initially charged in the Complaint filed against him with one count of bank fraud under 18 U.S.C. § 1344. (Complaint, ECF No. 1, ¶ 1.) A violation of that statute carried with it a fine of not more than $1,000,000 or imprisonment of not more than 30 days, or both. 18 U.S.C. § 1344. However, the charging instrument to which Mingo Lamar pled guilty (i.e. , the Misdemeanor Information, ECF No. 11) charges Mingo Lamar with one count of bank fraud under 18 U.S.C. § 2113(b), as follows:
[T]he defendant did knowingly take and carry away, with intent to steal or purloin, property and money not exceeding $1,000 in value belonging to, and in the care, custody, control, management and possession of, a bank, to wit, [defendant] deposited checks payable to others in bank accounts controlled by [defendant] at financial institutions, without the knowledge or consent of the checks' payees.
(Misdemeanor Information, ¶ 1.) Section 2113(b) provides that, if the stolen money does not exceed $1,000 in value, a violation will result in imprisonment of not more than one year. 18 U.S.C. § 2113(b).[2] Since the maximum term of imprisonment authorized is one year or less, the offense to which Mingo Lamar was charged was classified as a misdemeanor. See 18 U.S.C. § 3159(a)(6).
The fact that Mingo Lamar's offense of conviction is a misdemeanor, and not a felony, is significant. The Court finds persuasive the analysis of the court in United States v. Payne , No. 09-MJ-517, 2009 WL 5062099 (S.D. Ohio Dec. 16, 2009), which addressed a violation of 18 U.S.C. § 641. That statute (regarding the theft of government property), like the statute at issue in this case (i.e. , 18 U.S.C. § 2113(b) ) also had both a misdemeanor and a felony version, with the misdemeanor version relating to a loss of less than $1,000. The Payne court held:
[T]he offense of conviction will, by all parties' agreement, be the misdemeanor version of the offense described in 18 U.S.C. § 641. By definition, that offense cannot involve a theft of government property in an amount in excess of $1,000. It would be hard to conclude that restitution in any amount greater than $1,000 would be compensating the government for losses caused by the misdemeanor offense described in the Information. The logical inconsistency between an offense which cannot involve a loss greater than $1,000, and a restitution order for losses that exceed that amount, is simply to[o] difficult for the Court to overcome.... [N]o matter how the parties may attempt, in a plea agreement or plea colloquy, to enlarge the scope of the "offense of conviction" here, that offense remains a misdemeanor and is statutorily limited to conduct that deprived the United States of property with a value of less than $1,000.
Payne , 2009 WL 5062099, at *3. So too, in the present case, the Court cannot find that Mingo Lamar should pay restitution in an amount greater than the amount as to which he was criminally charged, i.e. , not greater than $999.
Both the Government and Mingo Lamar cite to the decision in United States v. Morrison , 685 F.Supp.2d 339 (E.D.N.Y. 2010), to support their positions. (3/28/18 Gov't Ltr. at 2; 3/15/18 Def. Ltr. at 3.) The Government cites Morrison for the proposition *381 that "the scope of restitution was determined by the time period set forth in the indictment." (3/28/18 Gov't Ltr. at 2.) While that is true, in Morrison , Judge Hurley relying on Hughey v. United States , 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), and its progeny, still limited the scope of restitution to the offense of conviction. 685 F.Supp.2d at 348-49. The fact that the offense of conviction in Morrison was limited in temporal scope, rather than, as here, limited in monetary scope, seems to the Court to be of no moment.
Thus, the Court will cap Mingo Lamar's restitution at $999, with that amount being allocated between BOA and Chase[3] in their proportional shares, as set forth in the Conclusion below.
B. Mingo Lamar Should Not Pay A Fine
The Court finds that Mingo Lamar has established that he is indigent. (See Marcus Amelkin Decl., ECF. No. 20.) The Government has taken no position to the contrary. Thus, the Court declines to order that a penalty be paid by the Defendant.
CONCLUSION
For the foregoing reasons, Mingo Lamar is ORDERED to pay the sum of $709 to BOA and $290 to Chase in restitution, but is not required to pay any fine. The Court will forthwith enter the Amended Judgment of Conviction reflecting this determination.
SO ORDERED.

Although Hughey was decided prior to the enactment of the MVRA, courts have extended its analysis to the MVRA context. See , e.g. , United States v. Oladimeji , 463 F.3d 152, 158 n.1 (2d Cir. 2006) ; United States v. Hughey , 147 F.3d 423, 437 (5th Cir. 1998) ("That part of Hughey which restricted the award of restitution to the limits of the offense ... still stands.").

There also is a felony version of 18 U.S.C. § 2113(b), which applied in circumstances where the stolen money exceeds $1,000.

As part of the procedure for determining restitution, the Government has the burden of proving the amount of loss suffered by a crime victim. 18 U.S.C. § 3664(e). Here, since TD Bank declined to respond to the Government's request for additional restitution information, the Government has not carried its burden as to TD Bank, and no award of restitution is being made to TD Bank.